Chief Justice Robertson
delivered this Opinion.
Judge Ewing took no part in the decision, as he had not taken his seat upon the bench when the cause was argued.
This is an action of detinue brought by the executors of John Bernard, deceased, against William Chiles, for a female slave named Ester; whom he bought, in 1823, at a sheriff’s sale, under a fien facias in favor of Frederick Loring against Joshua Bernard; who, claiming the slave in right of his wife, transferred her, in April, 1809, to John Bernard, by bill of sale purporting a valuable consideration.
After evidence had been given tending to prove, that either Joshua Bernard, or his wife, had been in the ostensible possession of Ester, from about the date of the bill of sale until the sale under execution, in 1823, and that the said Joshua and wife had lived separate and *96 apart from 1812, she retaining the possession of the slave and living on the land of John Bernard, and aftqr facts had also been proved, tending to show that, in 1817, Loring’s judgment, to satisfy which Ester was sold under execution, had been paid off or otherwise satisfied, in the Territory of Michigan, where Joshua was then living, — various instructions were given, and refused, by the Court, respecting the legal effect of the facts and hypothetical deductions from them; and thereupon verdict and judgment were rendered in favor of the executors.
Circumstances held to be sufficient to authorize a jury to presume that a judgm’t had been satisfied.
A sale under execution, after the judgm’t has been satisfied, is void.
The vendor is bound by his sale and the title rests in the purchaser, notwithstanding the sale may have been such as, by the statute of frauds, is void as tc creditors $• subsequent purchasers. And a sale under execution, of property which the def’t had previously sold, will not affect the right of his vendee, unless the pl’tf in the execution was then his creditor.
*96 Two principal questions virtually embrace all the various points that are presented for the consideration of this’Court: — First—was the evidence sufficient to authorize the] jury to decide that Loring’s judgment had been satisfied before the purchase of the slave by Chiles, under the execution on that judgment? and, if so, what effect should that fact have on the title claimed to have been derived from the sale? And, second — did the Circuit Judge err in deciding, that the possession of Ester by Joshua Bernard’s wife, after her separation from him, was notr'such a possession by him, as would subject the slave to the demands of his creditors, under the statute of frauds and perjuries — 1 Stat. Law, 737-8?
First. Whatever ground there might be for doubt respecting the fact of the alleged- satisfaction of Loring’s judgment prior to the sale of Ester, under his execution thereon, we are nevertheles of the opinion, that the return (“ settled”) on the writ which was issued on that judgment, in Michigan, and the parol proof, that the officer who made that return, was also the attorney in fact of Loring, and that Loring afterwards admitted that his said agent had collected the amount of the judgment, were sufficient to authorize the jury to decide, that the judgment had, in fact, been discharged in 1817. And, if it had been so discharged, the sale under the execution was void, and could have transferred no title whatever. For without a subsisting, unsatisfied judgment, Loring could not have had any right to subject the slave as the property of Joshua Bernard. As the bill of sale had vested the title in John Bernard, and as," between *97 Joshua and John, the parlies to il, it was valid and effectual, even though it may have been, in fact or in law, fraudulent so far as it might tend to defeat or frustrate the rights of a bona fide creditor or purchaser of Joshua, the slave Ester was, of course, not liable to sale under the execution, unless Loring, the plaintiff in the execution, was, at the time of the sale, a judgment creditor of Joshua Bernard. And if she was not subject to the execution, the sale of her by the sheriff, could not have either vested the title in the purchaser, or affected the legal right of John Bernard.
The possession contemplated by the statute of frauds, is a possession ostensibly by the debtor or for his use— such as, being a badge of ownership, might give a delusive credit. And, though the possession of a wife living separate from her husband, of her own or of his property may be deemed his possession, — property lent or entrusted to her, by a friend or stranger,is notirc. his possession, within the statute, or for any purpose.
The question, therefore, whether the judgment had been satisfied or not was material; and the jury had a right to decide it.
Second. The possession' contemplated by the statute of frauds (supra,) must be ostensibly either actual or usufructuary: that is, it must be a possession in fact, by the debtor, or under him, or apparently to his use; such a possession as would be a badge of property, and might, therefore, give a delusive credit. Now, although, after a separation a mensa, the possession by the wife de jure of her own property or of that of her husband may be his possession, for many legal purposes, — nevertheless, her actual or beneficial possession of the property of a benevolent stranger or friend, is not, either in fact or in law, the possession of her husband in any sense or for any purpose. After the separation he was not; in fact, actually possessed of the slave; and, as the title wTas in John Bernard, and as the constructive possession follows the title, the law presumed the possession to have been in the owner, and not in the absent husband, whose only right even to the use was founded on the technical fiction of the identity, in law, of husband and wife, or on the mere legal power, still conceded to him by the common law, over his wife, and over the use of property in her possession. The property of another held by her, or to her use, he could only have enjoyed by and during his cohabitancy with her. Then, unless the title was in Joshua Bernard, or his wife, her possession and use of the slave after their separation should not be deemed to have been, either in fact or in law, his possession. And it could *98 not be said that John Bernard had. permitted him, under a loan or otherwise, to remain in the possession of the slave, when his wife alone had been permitted to enjoy the possession and use, and only, perhaps, because he had abandoned her and left her in helplessness and destitution. John Bernard’s title, whatever it may have been, should not be forfeited or jeoparded by such permission given to a deserted, female friend. The statute of frauds was enacted for no such purpose; and does not apply to any such transaction.
As to the fact of separation, and its date, the jury had a right to decide, and seem to have been left free to decide for themselves.
Having thus disposed very briefly of the two leading points, we have only to observe, that all the instructions which were given to the jury, seem to have been substantially right, and that those which were overruled, had either been before given in effect, or were erroneous assumptions of law or of fact; some of them, which would have been otherwise unexceptionable, were properly rejected, because they contemplated a finding for Chiles, without any regard to the question whether Boring’s judgment had been satisfied or not, in 1817.
Wherefore, in the great multitude of motions and points presented, we perceive no error to the prejudice of the plaintiff in error; and therefore, the judgment of the Circuit Court on the verdict of the jury, whether that verdict be clearly sustained by the facts or not, must be affirmed.