M'COY VS MOSS and NEWBERRY.

*As to evidence varying written contracts.*

1. In an action by a vendor to recover the amount of a note, given for slaves, the bill of sale of which contains no words of delivery; the vendee cannot show by parol, that by the contract of sale, the vendor was to deliver one of the slaves, and that he failed to do so.

On a writ of error to the Circuit Court of Chambers county.

In this case, M'Coy declared against the defendants in error, upon a promissory note; and in defence, the defendants plead, First—*non assumpsit*: secondly—*award*: and thirdly—*a failure of consideration.* Upon each plea, the plaintiff took issue to the country; and a verdict was rendered in favor of the defendants.

It appeared in the progress of the trial, that the consideration of the note sued upon, was the sale of two negro slaves to the defendants, under a bill of sale, in the following words:

"The State of Alabama, Chambers county— Know all men by these presents, that I, Neely M'Coy, of the county and State aforesaid, for and in consideration of the sum of one thousand and fifty dollars in hand paid, by Wiley Newberrey, of the same place, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have bargained and sold, unto

Wiley Newberry, George, a man about thirty years old, and Cindy, a woman about twenty years old; to have and to hold the above described negroes unto the said W. Newberry, his heirs and assigns, to his and their own proper use, benefit and behoof for-ever: And I, the said M'Coy, my heirs and as-signs, do warrant the said negroes to be sound in body, mind and limb, and from and against all oth-er person or persons," &c.

The defendants, in support of their plea of a fail-ure of consideration, offered to prove by parol evi-dence, that the plaintiff was to deliver a certain negro slave, to the defendants, which he did not do. This testimony, however, was objected to as vary-ing the terms of the bill of sale, but was admitted by the Court, who refused to charge the jury to re-ject it from their consideration.

It was further in proof, that defendants, by their agent, had taken the said slave into possession in Georgia, whither he was sent for that purpose, the contract having been made in this State; also, that the negro was left in Georgia, having escaped from said agent, and so remained.

And the plaintiff. having excepted, took a writ of error.

*Ellis* for plaintiff in error—*Porter*, contra.

GOLDTHWAITE, J.—The payment of the note on which the action is founded, was resisted on the ground of a failure of consideration, which is dis-closed by the bill of exceptions to have been two slaves, sold by M'Coy to Newberry.

5 P. 12

For these slaves, a bill of sale was executed, using words passing a present interest, and containing a warranty, that the slaves sold, were sound and free from the claims of all persons whatever, but, *nothing is mentioned of delivery.*

The defendants proved by parol evidence, that *the plaintiff was, by the contract, to deliver a certain negro fellow to them,* and that no delivery was made. The admission of this evidence, was objected to by the plaintiff, because, (as he insisted,) it varied the written contract between the parties, and parol evidence was incompetent for this purpose, unless it was first shewn that an agreement was made subsequent to the execution of the written contract.

The parol evidence was however admitted by the Court below, a bill of exceptions was signed, and sealed; and the judgment rendered against the plaintiff on verdict, is now sought to be reversed, because of this alleged error.

If the evidence is understood to apply to any other, than one of the slaves named in the bill of sale, there would be no doubt as to its being error to admit such evidence; but, we think a fair interpretation of the bill of exceptions, allows the presumption, that one of the two slaves sold, was referred to and spoken of. This being the construction which we place on the bill of exceptions, the necessity is imposed, of considering whether the evidence admitted, was such as varied, contradicted or explained the written contract—as the rule is well understood, that parol evidence is inadmissible for any of these purposes.

M'COY *vs* MOSS and NEWBERRY.

The bill of sale, introduced in evidence before the jury, mentions nothing of a *delivery* to be made of the property sold; and unless it be *an incident to all sales*, it must follow, that all stipulations in reference to the mode, time and place of delivery, must be reduced to writing, if the contract itself is so evidenced, and if omitted, then parol evidence to supply the defect, would be irregular and inadmissible.

Judge *Story*, in his work on the conflict of laws, says: "The common law deems a sale, *as between the parties*, complete without delivery"—page 318.

The same eminent, jurist, in the case of *Meeker vs Wilson,** declares, "that by the common law, [*1 Gall. R. 419.] *a grant or assignment* of goods and chattels, is valid between the parties, without actual delivery, and the property *passes immediately* upon the execution of the deed;" this is also recognised as a general rule, perfectly well established in the case of *Sampson vs Sumner.*† [†17 Mass. R. 110.]

In 2 *Black. Com.* it is thus laid down; "As soon as the bargain is struck, the property of the goods is transferred to the vendee, and that of the price to the vendor; but the vendee cannot take the goods, until he tenders the price agreed on; but if he tenders the money to the vendor, and he refuses it, the vendee may seize the goods, or have an action against the vendor for detaining them. And by a regular sale, without delivery, the property is so absolutely vested in the vendee, that if A sells a horse to B for ten pounds, and B pays him earnest, or signs a note in writing of the bargain, and afterwards, before the delivery of the horse, or mo-

ney paid, the horse dies in the vendors custody, still he is entitled to the money, because, by the contract, the property was in the vendee."

These authorities shew that a sale is complete without delivery; and in the present case, it being evidenced by a written contract, passing a *present interest* in the slaves, sold and granted, parol evidence was inadmissible to extend or enlarge the contract, or indeed in any manner to change or modify the same.

If such proof could be admitted, a contract in writing might be essentially varied, as without words shewing a different intention between the parties, the thing sold, if presently conveyed, would without any delivery, be at the risk of the vendee; and if the parties intended to contract for the future delivery, so as to leave the thing contracted for, at the risk of the vendor, this stipulation should enter into and form a part of the contract. If a contrary rule was adopted, a written contract would be subject to many and various modifications. It might be insisted that the delivery was to be made at some other time or place, or under peculiar circumstances, which would materially vary, alter and explain a written contract.

It must not however be understood, that the omission of an undertaking to deliver the thing sold, by the vendor, would authorise him to withhold it from the vendee; for in such case, the latter might, after demand and refusal by the vendor, elect either to bring his action to recover the thing, or to consider the contract of sale as rescinded, and sue for the price paid. So, if a thing which had no ex-

istence, was sold, the contract of sale would be void, and the vendee immediately entitled to his action; and if the vendor had no title, the vendee might sue at once for the price paid, considering the contract as at an end, or might maintain his action on the warranty of title, express or implied.

No case can well be supposed, in which the law does not fully protect the vendee from the fraud of the vendor, and if a delivery was prevented by him, after a sale, while the thing was in existence, and under his control, he would be responsible to the vendee; but if the thing perished or deteriorated in value, without the fault of the vendor, it would be the loss of the vendee, unless it could fairly be inferred, from the contract, that it was to remain at the risk of the vendor, until a delivery was made, and the possession changed.

The judgment rendered by the Court below, must be reversed, and the cause remanded for further proceedings.