M'CUTCHEN'S ADM'RS *vs.* M'CUTCHEN.

1. Proof, that a witness whose testimony has been taken by commission *de bene esse,* started before court to move with his family to a neighboring State, is sufficient to authorise the reading of the deposition.

2. A witness, whose credibility is impeached, is sufficiently sustained by proof that "his general character was good, and that he was entitled to full credit on his oath."

3. An unconditional grant of personal property, is perfected by the delivery of the deed to a third person, for the use of the grantee, though the possession may remain in the grantor.

4. Such a deed cannot be revoked by the grantor after *delivery,* as the deed vests the title to the property, and the right of possession in the grantee.

5. The intention of the grantor in making the deed, when ascertained from the deed alone, is for the court to determine, and not the jury.

6. As between the donor, and those claiming under him and the donee, a gift of personal property by deed, is valid, though possession remain with the grantee.

Error to Jackson Circuit court.

McCutchen's adm'rs *vs.* McCutchen.

Detinue for slaves—tried before *Lane, J.*

John McCutchen, of Jackson county, in his life time, executed a deed of conveyance of sundry negro slaves, to his grandson, William W. McCutchen, then in the State of Mississippi, and delivered the same to John H. Gray, to be handed to W. W. McCutchen. John McCutchen died in January, eighteen hundred and thirty-five, and shortly afterwards, Gray handed the deed to said W. W. McCutchen, who then obtained possession of the negroes mentioned in the deed. The suit was brought by the plaintiffs, administrators of John McCutchen, against the grantee, for the recovery of the slaves. Plea—*non-detinet.* Verdict and judgment for defendant.

The deed was as follows:

" To all people to whom these presents shall come—I, John McCutchen, do send greeting: "Know ye, that I, the said John McCutchen, of the county of Jackson, and State of Alabama, for, and in consideration of the love, good will and affection, (and services rendered,) by my loving grandson, William Walker McCutchen, have given and granted, and by these presents do freely give and grant, unto the said William Walker McCutchen, his heirs, executors or administrators, a negro woman named Mina, and her children, to wit, Sally, (a girl,) Taletha, Anna, a boy Andrew, and Alexander; also a girl, an infant named Mary. To have and to hold the said negroes, to him the said William Walker McCutchen, his heirs, executors or administrators, from henceforth, as his proper right, absolutely, without any manner of condition. In witness whereof, &c.

JOHN M'CUTCHEN, [seal.]

Signed, sealed and delivered, in presence of John H. Gray."

The testimony of Gray, in support of the deed, was taken by commission, he being about to leave the State. The deposition was objected to,—when proof was made that Mr. Gray had started for Arkansas, and the objection was overruled. The credit of Gray being impeached, proof of his "good character, and that he was entitled to full credit on oath," was made by the deposition of James B. Graham.

Upon this evidence, plaintiffs requested the court to give the jury the following instructions:

1. That if it was part of John McCutchen's instructions to Gray, and his intention in making said deed, that the property given therein, should not pass into the possession of the defendant till after his death, and the property was not in fact put in his possession till after the death of said John McCutchen, it was not a good gift,—which instruction was given with this qualification: that if the deed remained in Gray's hands unrevoked, till after donor's death, and was then delivered, it completed and perfected the gift;

2. That to constitute a good grant, or gift of personal property, the possession of the property must pass out of the donor, and vest in the donee immediately; and if it do not so pass, the grant or gift is not a good one,—which was refused to be given as asked; and the court charged, that if the deed was delivered, the delivery perfected the grant or gift;

3. That if the deed was deposited with Gray, to be delivered to defendant, in the event that John McCutchen

should die before his return to the county, and defendant did return to the county before his death, that upon such return before the death, the agency and authority of Gray ceased: that he had no power to deliver the deed, and any delivery made by him after the death of John Mc-Cutchen, was not good,—which was refused; and the court charged, that if the deed remained in Gray's hands unrevoked, till donor's death, and was afterwards delivered by him, such delivery was good, and perfected the gift;

4. If they believed there was not such a possession of the property in defendant, as would take away John McCutchen's election during his life, whether to deliver it or not, that for the want of such possession, taking away his power of election, the gift was not complete—which instruction the court refused to give;

5. That if defendant obtained possession of the property after the death of John McCutchen, without the authority or consent of any person qualified to give it—such possession would not perfect the gift. Refused.

6. If the possession of personal property, given whether by deed or by parol, do not pass out of the donor at the time of the gift, such gift is not good—which instruction was refused;

7. That if it be a condition of a gift of personal property, that the thing given, shall not be delivered till a future day, and the thing given is never delivered during the life of the donor, the gift is not good, whether it be by deed or parol—which was refused.

The court charged, that the delivery of the deed in this case, to the witness Gray, amounted to a delivery

of the property given, and the delivery to him was a delivery to defendant.

The charges given, and the refusals to charge as requested, were excepted to by plaintiffs.

Plaintiffs now assigned, that there was error—

1. In admitting Gray's deposition ;

2. In admitting the deed of gift ;

3. In admitting Graham's deposition ;

4. In admitting proof of the hand-writing of John McCutchen ;

5. In refusing to give the instructions as asked, and in giving the charges objected to.

*Robinson*, for plaintiffs in error.

*Hopkins*, contra.

ORMOND, J.—Several preliminary questions are raised on the record in this case, and have been made in argument, which it will be proper to determine, before proceeding to the examination of the main question.

The first of these, is an objection to the reading of the deposition of John H. Gray, because it was not shewn that he had left the State. The deposition of Gray had been taken by authority of the statute authorising the deposition of witnesses about to leave the State to be taken. As the statute declares that depositions shall be taken *de bene esse*, it was necessary for the party offering it, to show that the witness was not then within the jurisdiction of the court. For this purpose, proof was introduced, that the witness, Gray, " had started to move to the State of Arkansas with his family, some short time

McCutchen's adm'rs *vs.* McCutchen.

before court, but expected to stop and stay some time in Morgan county, with his relations. We think this was sufficient to authorise the reading of the deposition, unless it was shown that the witness had not carried his purpose into effect. To hold otherwise, would be to require the party wishing to use such testimony, to follow his witness to the limits of the State to exclude the presumption, that he was not in the State at the time of the trial.

The deposition of Gray having been read, proof was offered, conducing to impeach his credibility : to sustain him, the defendant below, and in this court, read the deposition of James B. Graham, who deposed, that he became acquainted with Gray in the year eighteen hundred and eighteen, and was acquainted with him for three or four years in the county of Morgan, and at that time, his general character was good, and that he would be entitled to full credit on his oath. This testimony is objected to, because the witness did not state that he knew the general character of Gray for veracity. To enable a witness to testify to the credibility of a person, he must know the general estimation in which he is held by his neighbors: this constitutes his general character. We cannot agree with the counsel for the plaintiffs, that a man notoriously wanting in veracity, could be considered to be a person of good general character. This necessary constituent of good character, must be included in the general terms employed by the witness, especially, as he adds, that " he would be entitled to credit on his oath."

The defendants below were also permitted to prove

the hand-writing of John W. McCutchen, the maker of a deed, the execution of which the witness, Gray, had proved—and it is insisted that this was improper, because evidence had been offered by the plaintiffs, conducing to show that McCutchen, the maker of the deed, was not competent to make a deed, from imbecility of mind. On looking into the bill of exceptions, it appears that testimony was offered by the plaintiffs, to show the imbecility of mind of John McCutchen, but conceding that the testimony objected to, would have been improper on that issue, (which it is not necessary now to determine,) that could not have prevented the defendant from introducing it for another purpose for which it was competent, and to which object it would have been restrained, on motion by the court. The motion, therefore, to exclude it generally, was properly rejected.

These preliminary questions out of the way, we will now proceed to consider the principal question in the cause, arising out of the different charges given and refused by the court. These charges all relate to, and grow out of, a gift or grant of the slaves in controversy, alleged to have been made by John McCutchen, to the defendant, his grandson. It will aid us in the investigation of the points presented by the bill of exceptions, to consider the general properties of instruments of this character.

A pure gift of personal property requires for its consummation, a delivery of the subject of the gift. Where a gift of personal property is made by deed, for a good consideration, the delivery of the deed transfers the right to the property, and would, it seems from the authori-

McCutchen's adm'rs *vs.* McCutchen.

ties, be valid between the parties, without an actual delivery of the property itself. The deed is evidence of the transfer of the title, and if the possession of the chattel should be afterwards withheld, a suit could be maintained for its recovery, and the maker of the deed would, be estopped from denying the validity of the gift.

It is equally clear, that at common law, a deed granting personal property for a valuable consideration, as between the parties to the deed, is conclusive against the grantor; and that in a suit against him, on the deed, he will not be permitted to question either the adequacy of the consideration, or the fact that such a consideration was given—(Burn vs. Winthrop, 1 Johns. Chan. 329; Banks, adm'r, vs. Marksberry, 3 Littell, 275; Jones vs. Jones, 6 Conn. R. 111.) The same decision, we are informed, has been made by the Supreme court of Tennessee, reported in 2 Yerger, 562; by Judge Story, in 1 Gallison's R. 419, and by the court of King's Bench, reported in 2 Barnwell & Alderson, 551; see also the case of McCoy vs. Moss & Newbery, 5 Porter, 88. In the case cited from 3 Littell, the court held, that a deed conveying personal property, founded on good consideration, and providing for the possession of the property by the donor, until his death, could, after his death, be enforced at law.

It is insisted by the counsel for the plaintiffs, that our statute authorising the consideration of sealed instruments to be enquired into at law on a special plea, has changed the common law in this respect. As no evidence impeaching the consideration of the deed in this case, was offered by the plaintiffs in error, or charge asked for on that point, it is not necessary to determine

9 P 83

whether the statute is confined to bonds for the payment of money, or whether it extends to cases of deeds for the conveyance of personal property. As the services of the defendant, which are recited in the deed, will constitute a valuable consideration, this deed may be considered either as a gift made on good consideration, or as a grant on a valuable consideration—upon which last supposition, it would be equivalent to a sale; to the validity of which, possession is not necessary, as between the parties to it, though it might be void as against creditors— (17 Mass. R. 113, 114; Kent's Com. 454, and the note to the last edition.)

With this view of the law, we will now proceed to consider the charges of the court, as given and refused. The deed out of which the controversy in this case arises, is an unconditional conveyance by John McCutchen, to the defendant, who was his guardian, of certain negroes in the deed mentioned, for the consideration, as expressed in the instrument, "of the love, good will and affection, and services rendered, by my loving grandson," —and is unconditional. The deed, according to the proof of Gray, the subscribing witness, was delivered to him after its execution, to be held by him for the use of the defendants; and in the event of the death of the grantor, during the absence of the defendant, who, at the time, was in the State of Mississippi, the witness was to take the necessary steps to secure the property for him. After the death of the grantor, the witness delivered the deed to the defendant. The slaves in the deed mentioned, remained in the possession of the grantor, until his death, when they came to the possession of the defendant.

The following instructions were asked for by the plaintiffs' counsel:

1. That if it was part of John McCutchen's instructions to Gray, and his intention in making said deed, that the property given therein, should not pass into the possession of the defendant till after his death, and the property was not in fact put in his possession, till after the death of the said John McCutchen, it was not a good gift; which was given with this qualification—that if the deed remained in Gray's hands unrevoked, till after donor's death, that it completed and perfected the gift.

The charge thus given by the court, is liable to several objections. It is erroneous, in supposing that the grant was not perfect by the delivery of the deed to Gray, for the use of the defendant, but required to consummate it a delivery to the defendant himself. It was also erroneous, in referring to the jury the question of the intention of the donor in making the deed. The intention of the donor was to be gathered from the terms of the deed, which it was the province of the court to expound, and not the jury. The charge given was bad also, because it supposes that the donor had power to revoke the deed after delivery: the court, therefore, should have refused the charge. But the plaintiff cannot complain that an erroneous charge was given at his instance—nor can the wrong qualification annexed to it by the court, avail him here, as it was an error against the defendant, and could not, by possibility, prejudice him.

The delivery to Gray, if in fact made, and unconditional, vested the title to the property, and the right to the possession, in the grantee. A delivery to Gray, was

á delivery to the defendant;. a power of revocation existing in the grantor, is contradicted by the deed itself, and utterly inconsistent with the fact of an unconditional delivery of the deed.

The fact, that the property remained in the grantor's hands until his death, and that the deed remained with Gray, were circumstances which the jury might have, and doubtless did consider, in enquiring whether any delivery was made, or if made, whether it was unconditional.

The second charge moved for is, that to constitute a good grant, or gift of personal property, the possession of the property must pass out of the donor, and vest in the donee immediately ; and if it do not so pass, the grant ór gift is not a good one. This charge the court refused, but charged the jury, that if the deed was delivered, such delivery perfected the grant or gift.

There was no error in the refusal to give this charge, or in the one given. It has already been stated, that by the delivery of the deed, the title to the property passed, ánd did not require *actual* possession of the property, to consummate or perfect the grant. The law is correctly laid down in the charge given.

The third charge moved for, is, that if the deed was deposited with Gray, to be delivered to defendant, in the event that John McCutchen should die before his return to this county; and defendant did return to the county before his death, and upon such return before the death, the agency and authority of Gray ceased, that he had nó power to deliver the deed, and any delivery made by him after the death of John McCutchen, was not good—

which the court refused, and charged, that if the deed remained in Gray's hands unrevoked till donor's death, and was afterwards delivered by him, such delivery was good, and perfected the gift.

The charge moved for, was correctly refused by the court, if for no other reason, because it was abstract. No facts appear in evidence, to warrant the conclusion, that the deed was to be delivered to the defendant, only on the contingency supposed. The observations made on the first charge of the court, apply to the charge here given. The court presumes a power in the grantor to revoke the deed. The deed was delivered unconditionally, according to the testimony of Gray—no such power, therefore, existed; but, as before remarked, this was an error in favor of the plaintiff in error.

The fourth charge moved for is, if they believed there was not such a possession of the property as would take away John McCutchen's election during his life, whether to deliver it or not, that for the want of such possession taking away his power of election, the gift was not complete—which was refused.

This instruction, like most of the preceding, is grounded on the false supposition, that the validity of the grant depended on the actual possession by the defendant, of the slaves granted, and was correctly refused.

To the same effect, are the fifth and sixth instructions, and which were therefore properly refused.

The seventh instruction is, that if it be a condition of a gift of personal property, that the thing given shall not be delivered till a future day, and the thing given is never delivered during the life of the donor, the gift is

not good, whether it be by deed or by parol—which was refused.

The only evidence of a gift, was the deed, which was absolute and unconditional in its terms. The motion for an instruction, therefore, as to the effect of a gift not in proof, was an abstract proposition, and if given, could only have misled the jury.

Finally, the court charged the jury, that the delivery of the deed in this case, to witness, Gray, amounted to a delivery of the property given, and that the delivery to him, was a delivery to the defendant. This charge is, in a few words, the law of the case. It is, however, insisted that the court invaded the province of the jury, and charged, that the deed was actually delivered.

Whether the deed was in truth delivered to the witness, Gray, by the grantor, was a fact which appears to have been warmly contested in the court below, as an attempt was made to impeach his credibility, he being the only witness to that fact; it is not, therefore, at all probable, that the court would undertake the decision of the fact of delivery. Taking this in connection with the other charges, it is quite clear that the court was making an effort to simplify the case, after the multifarious charges which had been moved for by the plaintiff, and to put it on clear and intelligible ground.

This court will not, on slight grounds, presume that the presiding judge will step out of his proper sphere, and undertake the decision of controverted facts. Whether there was a delivery of the deed, or whether it was ever executed by the grantor, depended on the credit which the jury might give to the witness, Gray. The

McCutchen's adm'rs *vs.* McCutchen.

question controverted between the court and the counsel, was not the fact, but the effect, of the delivery proved by the witness; and so we cannot doubt the court was understood by the jury, and so meant to be understood.

It is also contended by the plaintiffs' counsel, that the plaintiffs, as the representatives of John McCutchen, were entitled to the possession of the property, for the purpose of paying debts, even conceding that the title of the defendant was good.

The proof does not show when the defendant obtained possession of the slaves; it is, however, to be inferred from the record, that he took possession at the death of the grantor, and before the grant of letters of administration. If the property had come to the hands of the plaintiffs, as the representatives of the maker of the deed, through whom the defendant claims, the position of the counsel might even then be questionable. But for want of such possession, the slaves cannot be considered as assets in their hands, admitting they are subject to the claims of creditors, because possession did not accompany the deed. The representatives of a deceased person, can maintain no action to recover property, which the deceased himself could not have maintained—(See Roberts on Fraudulent Con. 593—where it is laid down that the fraudulent donor may be treated as executor *de son tort*—and authorities there cited; and see also Williams on Executors, 1020, and authorities there cited.)

The judgment of the court below is, therefore, affirmed.

COLLIER, C. J.—I concur in the judgment of the court

in this case, but as it is not necessary, I express no opinion upon the question, whether *a deed of gift of personal property passes the title to the donee, if the thing proposed to be given, is not delivered.* It sufficiently appears from the deed under which the defendant claims title, that it is founded on a *valuable consideration.*