## THOMAS v. WALLACE.

1 Where a deed is witnessed by three persons, two of whom reside out of the State and the other is dead, proof of either of the witnesses hand writing to the deed, is *prima facie* sufficient to allow it to be read to the jury.

2. A deed conveying slaves in trust for the uses "of the legal heirs of Margaret W, upon her body to be begotten; and in the case of the failure of issue of the said M. W, to revert, &c. The proceeds arising therefrom to be applied to the support of M. W, during her natural life, in case she shall have no children living, and at her death to revert, &c." vests no interest in M. W., so long as she has children living.

3. Under such a trust, the children of M. W, or their descendants are entitled to the use of the property, and the possession of the slaves by their father, is a possession by him as their natural guardian, and although it may have remained for more than three years without the assertion of title by the trustee, cannot be considered as a loan to the father, so as to bring the slaves within the influence of the statute of frauds, and make a purchase from him valid.

WRIT of Error to the Circuit Court of Dallas county.

Action of detinue by Wallace, against Thomas, to recover a slave. Pleas, *non detinet* and the statute of limitations.

The suit was tried at the Fall term, 1842, when a verdict was found and judgment given for the plaintiff.

At the trial, the plaintiff offered a deed in evidence, made in October, 1825, by William Wallace, conveying the slave in controversy, as well as others, and also a tract of land to the plaintiff, upon a consideration, and upon certain trusts which will be stated hereafter. This deed purported to be witnessed by Joseph Walker, Joseph Graham and D. C. Graham, and it was shown that the two first named had removed from the State, and that the one last named, was dead. The only evidence then offered to prove the execution of the deed, was by proving the hand writing of the witness, D. C. Graham, and upon this it was admitted to be read to the jury, notwithstanding an objection from the defendant.

The consideration for the deed is therein stated to be the sum of one thousand dollars, paid to the grantor by the plaintiff, and also the natural affection borne by him to his daughter Margaret E. West, wife of Henry West and her issue. The title of the

slaves and of the land, is conveyed to the plaintiff, his heirs and assigns forever, and the trusts are raised by these words.

"In trust for the uses of the legal heirs of Margaret West, upon her body to be begotten; and in case of the failure of issue of the said M. W., then the land and negroes shall revert to the said William Wallace, if living; and in case of his decease, then to his legal heirs in legal proportions. The proceeds arising from the said land and negroes, are to be applied to the support of the said M. W., during her natural life, in case she shall have no children living, and at her death to revert to the said W. W., or his heirs. And it is the distinct understanding of the parties, that the said Henry West is not to have the aforesaid land and negroes or any part thereof, either in the life time of the said M. W., his wife, or after her death; and the proceeds of the property are alone to be applied to her use, and the use of her children begotten upon her body." The plaintiff also gave in evidence a copy of the will of the said William Wallace, which will was admitted to probate the 11th day of September, 1826, and is of the same date, and witnessed by the same persons as the deed of trust. This will contains this clause. "I have given my beloved daughter, Margaret E. West, wife of Henry West, her part of my property, in a deed of trust with, or to her brother George E. Wallace, for her use."

The plaintiff likewise proved that the slave in controversy, in the possession of the defendant, was one of the slaves named in the deed of trust, and that the plaintiff for a short period of time after the death of William Wallace, had an agent residing near the residence of West, who was authorised to interfere if it should be found necessary for the safety of the property; and that on one occasion, when the slave in controversy had run away and came to the agent, he was sent home by him. It was also proved that Mrs. West, at the date of the deed, was the mother of children, who were living at the time of the trial.

The defendant then gave in evidence a bill of sale of the slave, made him by Henry West, on the 25th February, 1837; also a relinquishment of all right and claim, made by Mrs. West, on the 7th of October, 1839, at which time she was a *feme sole* by reason of her husband's death.

He also proved that William Wallace died within a year from the date of the will, and that soon afterwards, the slave in contro-

versy, as well as other property, which previously to his death had belonged to the deceased, went into the peaceable and quiet possession of West, and that the slave so remained until the sale by him to the defendant. During the same perod of time West was possessed of considerable other property acquired by various modes. West claimed the slave as his own property and exercised over it the same general undisturbed right of ownership as he also exercised over all the other property, and received and appropriated the proceeds to his own use.

The defendant also gave evidence, showing that from the death of W. Wallace, until the institution of this suit, the plaintiff had no known agent within the State, except for one or two years, during the most of which short period, the agent was at a distance of 60 or 80 miles from the county of Dallas, in which West and the defendant then resided. That when the defendant purchased the slave, West resided fifteen or twenty miles from the place of sale, and the same distance also from the residence of the defendant; and that the plaintiff had resided out of the United States for a considerable portion of the time since the death of W. Wallace.

With reference to this state of proof, the court charged the jury, that if the deed of trust was executed and delivered by W. Wallace, *bona fide* to the plaintiff, then it conveyed the entire legal estate in the property to him so as to enable him separately to sue for it. That the trustee might, consistently with the deed, have permitted West and his wife, to have the possession of the slave in dispute, but had the legal right uuder the deed to withdraw that possession, when he saw fit, and if refused, to sue and recover at law. That if the possession of West was not adverse to the trustee, but with his consent then, in a controversy between the trustee and any one deriving title to the property mentioned in the deed of trust from West, or from West and his wife, the second section of the statute of frauds did not apply so as to require the deed to be recorded to enable the trustee to recover, although the deed be founded alone on natural love and affection. That if a controversy had arisen between a *bona fide* purchaser from West, and W. Wallace, or his representative, founded upon any reservation of interest at the making of the deed, then that section of the statute would require the deed and reservation to have been recorded. That the deed of trust, though it created an estate tail, did not vest the fee simple in Mrs. West, but in

her children, and that a conveyance by West, or by Mrs. West, after his death, of the trust property would have no validity as against the trustee. That if after the execution of the trust deed, W. Wallace had retained possession of the slave in controversy, and had conveyed it to West, and he so holding, had conveyed it to the defendant, then the defendant's title would be good against the trustee; but if West did not so acquire title, and the only title which defendant had proved, was derived through the bill of sale in evidence and the release by Mrs. West, and if the deed of trust was made *bona fide*, and delivered to the plaintiff, and if no disposition of the property, inconsistent with that deed had been made by W. Wallace, then the title of the plaintiff was superior to that of the defendant, and it was so, although West may have obtained possession, from the representatives of W. Wallace, nothing being said by them of the deed of trust, and although he had held the property under such delivery and used it as his own down to the time of his conveyance to the defendant. That if the defendant set up a title to the property in controversy, then the trustee could maintain this suit without a demand previously made, although the possession may have been peaceably obtained by West, and from him in the same manner by the defendant.

The defendant excepted to this charge, but did not state wherein, or as to what particular point, unless the particular instructions asked by him, can be so considered. He then requested the following instructions which the court refused to give.

1. That our statute law may have the effect to invalidate or avoid a deed of trust like that before the jury, for the want of registration against other claimants under it than the grantor, and his personal representatives who have suffered and permitted the quiet and undisturbed possession of the property to remain in another for the space of three years and more without demand made and pursued in due course of law, on the part of such claimant, when the person so in possession has sold and conveyed the property to a subsequent *bona fide* purchaser, for a valuable consideration, without notice of any kind, and when such subsequent purchaser has also remained in the undisturbed possession for more than three years; that such, at least, would be the effect if the jury should be of the opinion that the consideration of the deed was no other than natural love and affection.

2. That if the beneficial interest or use of the slave in question

is, under the deed of trust, an estate tail, so as to become an abso-
lute interest in the part taken (as the court instructed the jury)
then according to the provisions of this deed a part of the interest,
at least, vested in Margaret West consequently, after she became
a widow, she was capable of transferring some portion of that
interest to the defendant.

3. That notwithstanding the deed of trust and the will of W.
Wallace if the slave in question went into the peaceable and un-
disturbed possession of Mrs. West, and her husband, and so re-
mained ten years or more, without demand made or suit institu-
ted for the same, and if during all this time they claimed the pro-
perty as their own, and exercised a general right of ownership and
control over the same as such, and that then West sold and de-
livered the slave for a valuable consideration to the defendant, as
expressed by the bill of sale, and the purchaser having no notice
actual or constructive, of any adverse claim, and if afterwards
Mrs. West, during her widowhood, duly executed her release,
&c·, to the defendant, as expressed, &c., for the consideration
therein mentioned, the defendant having acted in good faith in
each of the said transactions, then, under all these circumstances,
some portion at least of the interest of the slave had vested in him,
sufficient to deny the plaintiff a right to recover the same in this
action of detinue, although there may have been no intentional
fraud on the part of W. Wallace, the grantor in the deed of trust.

4. That if West and his wife, and the defendant under them,
held peaceable and undisturbed possession of the slave for ten
years and more, each of them having acquired the possession in
the same (peaceable) manner, and during all that time such pos-
sessors· respectively claimed the slave as their own, exercised
over it a general right of ownership and control, and had receiv-
ed and applied to their own use all the profits and proceeds of its
labor, though there may have been ·no intentional fraud on the
part of the original grantor, Wallace, yet the defendant, if a *bona
fide* purchaser for a valuable consideration, under the issues join-
ed in this case, was entitled to a verdict.

5. That if, under all the circumstances, as stated in the instruc-
tions last requested, should the jury so find them, and also be of
the opinion that the consideration for the deed of trust, was no o-
ther than natural love and affection, then they should find for the
defendant.

6. That if under the circumstances stated in the two instructions last requested, the jury should further be of opinion that the plaintiff never had possession of the slave, as trustee or otherwise, nor ever claimed or exercised any authority or control over it, or over the profits or proceeds of its hire, but on the contrary, that West and his wife, after the death of W. Wallace, received possession of the slave, in the same manner that the other children of W. Wallace received possession of their respective portions of his property, as provided by his will, nothing being said in reference to the deed of trust, and that they thus remained in the peaceable possession for ten years and more, they all that time claiming the slave as their own, and exercising all the usual acts of ownership over it, and so continued in possession until the sale and release to the defendant, he being a *bona fide* purchaser, and without any notice, actual or constructive, of the deed of trust, or other adverse claim, then the jury should find for the defendant.

7. That under the circumstances of this case, should the jury believe the facts to be as hypothetically stated in the three last instructions requested, if the plaintiff could maintain an action against the defendant for the slave, it could only be by suing in his capacity of trustee, and not individually.

The court, in answer to the request to give the several charges above specified, instructed the jury thus :

That if the deed of trust was executed and delivered by W. Wallace to the plaintiff, *bona fide*, and if Mrs. West was his daughter, then, in a controversy between the plaintiff and any one deriving title from her or her husband, the not recording the deed would make no difference as to the rights of the parties.

That although the deed might create an *estate tail*, it did not do so in Mrs. West, so as to make her capable of transferring any title as against the trustee, in whom the whole legal title was vested by the deed, but that if, notwithstanding the trust, W. Wallace had retained the possession of the property, and during his life had given or sold it to West, and he so holding had sold it to the defendant, then the title of the latter would be good. But if West, and his wife, or either of them, obtained possession in virtue of the deed of trust, and held subject thereto, no matter whether derived from the representatives of W. Wallace, or from the trustee, then no time during which the property was so held, would bar the trustee, and this although during such time West

35

and his wife should claim the property as their own, exercise over it the usual acts of ownership, and then sell it to a *bona fide* purchaser without notice.

That if the only title relied on by the defendant was derived from the bill of sale by West, and the relinquishment of title by his wife when sold, and had not proved that West had obtained title from W. Wallace in his life-time; and if the plaintiff had proved that he held under a deed of trust made *bona fide* from W. Wallace, such as was adduced in evidence, then his title was superior to that of the defendant, and it was so, although the plaintiff might never have had the actual possession, and although he might have permitted West and his wife to retain the possession for the length of time shown by the proof, without demand made; and it was the same if West had received the property from the representatives of W. Wallace, under his will, nothing being said in reference to the deed of trust by them.

That it was not necessary that the plaintiff should have further disclosed by the pleadings his proceedings as trustee.

The defendant excepted to the proof, the deed, to the charges as given, and to the refusals to give those requested by him.— These several matters are assigned as error.

SAFFOLD, for the plaintiff in error argued the following points:

1. That as there was no delivery of the property under the trust, and as it went into the possession of West without any notice of the deed, it must be considered as property distributed to him in right of his wife; or as a marital gift.

2. Conceding the deed to be valid as between the parties, yet it is void as to a purchaser from West, in consequence of the omission to register the deed as required by the statute of frauds.

3. That the trust estate is an *estate tail* in Mrs. West, and therefore the remainder over to her children, is void under the statute. Having then, the entire interest by the statute, she was competent to convey as she did after her husband's death.

GOLDTHWAITE, J.—1. We think the proof of the execution of the deed was entirely sufficient to authorise its admission as evidence. It has been often held, that one subscribing witness is sufficient to prove the instrument attested, though there are several. [3 Phil. Ev. 1262 ; 3 C. & H's notes.] The absence of

the subscribing witness beyond the process or jurisdiction of the court, is sufficient to let in inferior evidence. [Id. 1294.] And in such case it seems that proof of the hand-writing of the witness, without any further evidence, will suffice in the first instance, to·allow the instrument to be read to the jury, though it is usual, for greater caution, to add corroborating circumstances. [Id. 1266.] In fact, the proof of the witness' hand-writing, has been permitted, though he himself denies or doubts it. [Id. 1303, 4, 5.] So, if a witness recognizes his signature, and says he has no recollection that the writing was executed in his presence, but seeing his signature, he has no doubt he saw it executed ; this has always been received as sufficient proof of execution. [Id. 1304.]

From this view of the law, it may we think, be. concluded, that the testimony of one of several attesting witnesses is competent to prove the execution of the paper, either by testifying positively to the fact, or by acknowledging his signature, where he remembers nothing more. This being the law, all the witnesses being either dead or removed (as in the present case,) it would seem that the proof of hand-writing of one was *prima facie* sufficient to allow it to be read to the jury.

2. Most of the other questions which have been argued on behalf of the plaintiff in error, are dependent upon the supposed interest of Mrs. West, under the deed of trust ; and after a very deliberate examination, we have arrived at the conclusion that it was intended by the grantor that she should have none whatever; except upon a contingency, which does not appear to have yet existed.

It is proper to remark, that the deed has no dependence upon the will, which indeed, refers to it, but only as a valid subsisting instrument ; and such undoubtedly it was, upon the authority of our previous decisions. [McCutchen v. McCutchen, 9 Porter, 650 ; McRae v. Pegues, *supra.*]

The intention evinced upon the face of this deed is entirely clear, and does not require the transposition or interpolation of any words to make it so. The deed declares two trusts ; one of which is absolute, in favor of all the legal heirs of his daughter, born.of her body ; and the other, which is conditional, is in her favor, but is to have effect only when she is without children in being. With this idea of the grantor's intention, we will recite the operative words of the deed. " In trust, for the uses of the legal heirs of

M. West, upon her body to be begotten; and in case of the failure of issue of the said M. West, the above mentioned land and negroes shall revert, &c."

" The proceeds arising from the said land and negroes are to be applied to the support of the said M. West during her natural life, in case she shall have no children in being; and at her death to revert, &c."

The subsequent matter of the deed seems to have no influence whatever upon the trusts, but is declaratory of the grantor's intention that the property shall never be West's under any circumstances. The concluding declaration, that " the proceeds of the property are alone to be applied to her use and the use of her children;" must be confined to those uses as previously specified, which are, to her descendants, in the first instance, and to her only, when she has no descendants in being.

The proof before the jury showed, that during the whole period between the date of the deed and the trial, she had children living; consequently, there never has been a time when a court of equity would have given her either the use of the slaves or their proceeds. This circumstance, has been supposed in argument, one of much importance, because, (as insisted) if Mrs. West, at any time continuously for three years had been entitled to the use of the property, or even if the trustee had loaned it to her, the possession continuing with her for that period, would have made it subject to the creditors of her husband, or protected a purchaser from him. Without intending to decide what is the proper construction to be given to the statute, we shall refer to some decisions from other States, upon one precisely similar. [Guy v. Moseley, 2 Mum. 545; Lewis v. Adams, 6 Leigh, 320; Pale v. Adams, 7 ib. 80; Crenshaw v. Anthony, Mart. & Yerg. 102; Andrews v. Hartsfield, 3 Yerg. 39; Withers v. Smith, 4 Bibb, 171; Craig v. Payne, ib. 337; Chiles v. Bernard's ex. 3 Dana, 95; McLaughlin v. Daniel, 8 ib. 182; Strode v. Churchill, 2 Litt. 75; 1 Litt. 229; 1 Marsh. 7.]

3. Under the trust deed, the children of Mrs. West, or their descendants, are entitled to the use of the property, and therefore, when the trustee permitted their father to take and retain possession, it must be considered that he held it as their natural guardian; and this the more especially because the verdict concludes this point, for it was left to the jury to determine if West

held under the deed. In Seawell v. Glidden, [1 Ala. Rep. 52,] such a possession was held to be referable to the title of the child, and that the father's possession was in trust for him.

This in reality disposes of the case, by deciding the only question involved, and although some of the instructions, when given, as well as those refused, may be obnoxious to criticism, yet they do not affect the merits, for they become entirely abstract, under our view of the case.

Let the judgment be affirmed.