## GILL ET AL. V. TITTLE.

1. A deed conveying a slave, to the children of Joseph Gill and Nancy Gill, (describing the children by name,) " which said negro girl, and her increase, if any, at, and after his, the said Gill's death, and of his said wife Nancy, the above negro, and increase, if any, to be equally divided among the whole of the above named children, with the increase of the said Nancy's heirs, with the said Joseph; and I warrant, &c. the aforesaid negro girl Phebe, to the said described heirs of Joseph Gill, and their heirs forever," &c.; gives to the father and mother a life estate in the slaves, with remainder at their death to the children; and the father having sold the slave, a court of chancery will entertain a bill, and require the purchaser to give security to protect the interests of those in remainder.

Error to the 25th Chancery District. Before the Hon. D. G. Ligon, Chancellor.

E. W. PECK, for the plaintiffs in error, made the following points:

1. That the parents took an estate for life, by implication; or;

2. That the parents, during their lives, and the life of the survivor, were entitled to the possession and use of the property for the purpose of supporting themselves and rearing their children, and that the right of the children to the pos-

Gill et al. v. Tittle.

session, was intended to be postponed until after the death of their parents.

In construing this instrument, the court will endeavor to arrive at the intentions of the donor. To do this, it will be necessary to look, not only to the language of the deed, but also, to the relations and condition of the persons named in it; and, as the language employed is very inartificially used, if necessary, it may be transposed, and that which seems to be clearly understood, may be supplied. By doing this, the intention and meaning of the donor, which otherwise are left in doubt, will appear manifest. On the subject of construction, see Bates & Hines v. the Bank, 2 Ala. 477, *et seq.*

A devise over after the death of the wife, the law, in such case, presumes the intention to be, that the widow shall be tenant for life. 4 Kent's Com. 541, and note.

If A devise land to his heir, after the death of his wife, this is a devise by implication to the wife for life. Willis v. Lucas, 1 P. Wms. 472, 473.

If a testator gives to his heir after the death of A, he plainly means that his heir shall not take during the life of A : it is necessarily to be implied, that he means A to take during his (A's) own life. Aspenwall, v. Petvin, 1 Cond. Eng. Chan. Rep. 280.

2. If, however, the phraseology be left as it is used by the donor, I think it manifest, the donor intended, at least, that the parents should have the use of the property during their lives, and that the possession of the children should be postponed until that time, when they should be entitled to take the possession, and make the division contemplated by the deed. It is reasonable to suppose the donor meant the possession should immediately pass to the children—they were then young, and wholly unable to manage it ; besides, how could so many persons have the possession of a single slave. It must have been foreseen, that in all human probability, before the death of both parents, the children would be married and scattered no one could tell where. Does not this reasoning show, that the donor could not have meant that the title and possession of the slave should pass immediately, and

67

the right to divide it, should be postponed to such an uncertain and distant time?

EARNEST & WILCOX, contra.

A bill *quia timet* can only be filed to preserve an interest or estate to accrue at some subsequent period, and can never be made a substitute for an action of trover or detinue. In this case, the absolute interest in the slaves vested immediately upon the execution of the deed, in the "children" of Joseph Gill and his wife Nancy. The immediate, absolute and vested interest being in the children, the action of trover, or detinue, was the proper remedy; and law affording adequate relief, chancery has no jurisdiction. But the property is to be divided at the death of Joseph Gill. See 6 Port. 9. The same rule applies here, and Joseph Gill takes no interest whatever. The case of Thomas v. Wallace, 5 Ala. Rep. 268, is analogous. In that case, the court says concerning the interest of Mrs. West, "after a very deliberate examination, we have arrived at the conclusion, that it was intended by the grantor that she should take none whatever except on a contingency," &c. Here, there was no contingency even on which Joseph Gill could take an interest. See also the case cited by the chancellor, 2 Bibb, 55.

CHILTON, J.—The bill is filed by the complainants to protect their interest in certain slaves therein named, against a threatened injury on the part of the defendant, who has an estate for the life of the complainants' father and mother, and who, the plaintiffs pray, may be required to give security for the forthcoming of the slaves after the termination of such estate.

The title set up by complainants is derived under a deed from one Robert Freeman, which is made an exhibit to the bill, and is in the following words:

"Georgia, Oglethorpe county.

"To all to whom these presents may come, greeting:— Know ye, that I, Robert Freeman, of the county and state aforesaid, for, and in consideration of the natural love and affection which I have and do bear towards the family of children of Joseph Gill, of the county and state aforesaid: that

is to say, John L. Gill, Lucinda Gill, Marshall M. Gill, and Joseph M. Gill, and the heirs that he, the said Joseph Gill, may have by his present wife Nancy Gill, if any more there should be ; that I do by these presents, give and grant to the said family of children, and to the further increase, if any, one negro girl Phebe, and her increase, which said negro girl, with her increase, if any, at, and after his, the said Gill's death, and the death of his said wife Nancy, the above negro and increase, if any, to be equally divided among the whole of the above named children, with the increase of the said Nancy's heirs, of the said Joseph ; and I do, for myself, my heirs, executors, administrators and assigns, and no further, warrant, and forever defend, the aforesaid negro girl Phebe, to the said described heirs of Joseph Gill, and their heirs forever. In witness whereof, I have hereunto set my hand and seal, this 18th of December, 1812.

ROBERT FREEMAN, [seal.]"

(Signed, and duly attested.)

The answer of James Tittle, the defendant, avers a purchase of the slaves by him from Peter Tittle, who purchased from Joseph Gill, the father of the complainants, and demurs to the bill.

The chancellor was of opinion, that the deed vested an absolute estate in the children, and that having a present right of action at law, they had no grounds for a resort to equity. His decision is based upon the case of Robison v. Pitman, 2 Bibb, 55, where a gift of slaves was made *to commence* after certain lives, viz., the lives of the father and mother of the donees; held not to vest a life estate in the mother by implication, but left the title in the original donor until the happening of the contingency upon which the estate was to vest in the children. This authority, if scrutinized, will not sustain the decree of the learned chancellor. The case cited is not at all parallel with the case at bar. In that case, no title vested by virtue of the deed, until after the death of the father and mother, which was the period fixed for its commencement. In this case, the donor makes a *present* divestiture of title, and the only question is in whom it vests. According to the general and well settled rules of construction of agreements, (see them laid down in Bates & Hines v.

The Bank, 2 Ala. R. 477, 478,) we think there can be but little difficulty in arriving at the true meaning and intention of the donor in the present case. The gift was to be equally divided among the children, after the death of their father and mother. What disposition was to be made of the property in the mean time? This must be arrived at by construction. The children were very small at the time of the gift—they could not hold the property in severalty—some one must hold it; but they grow up and marry and leave the paternal roof, as is the case here. Why is it that they may not then take the property, and have a division by sale or otherwise, so that the object of the donor, if it was to provide for them solely, might be effected? The reason is obvious. The donor knew the children would share in common with the parents, the benefit of the slave while in possession of the latter, he therefore intended the parents during their lives should have the slaves, and at the death of the survivor, should be equally divided among the children. This is the construction which the parties themselves have placed upon the gift, as is shown by their conduct in relation to it. The gift was delivered to the father;—near forty years have elapsed, and no division has been, or can be made to the children, until the death of the parents. Had the donor no intention in thus long postponing the division? in postponing it not only to the period of the father's death, but also of the mother? We think he had, and that the intention was to vest the property for life in the parents, that they might be the better able to provide for the children, and support themselves when the children should no longer need their protection and aid. Thus construed, the object of the donor is accomplished, and no violence is done to the language employed in the deed. See Willis v. Lucas, 1 Pr. Wms. 472; Aspinwall v. Petvin, 1 Cond. Eng. Ch. Rep. 280. The case of Thomas v. Wallace, 5 Ala. Rep. 268, cited by counsel for defendant in error, is not opposed to the view here taken. In that case, by the *express language* of the deed, the proceeds of the estate were not to go to Margaret West, if she had children living to whom such proceeds might go; and having children living, no estate by implication could be

raised in her, for the evident reason, that such estate would be repugnant to the expressed provision of the deed.

It may be remarked, moreover, that the defendant, by his answer, does not gainsay the father's title. Indeed, if the elder Joseph Gill, from whom he claims to have derived his title, had no interest, the defendant has none, and he should distinctly have disclaimed it; so that the party, if turned over to the law court, might not there be met with the objection, that the deed vested a life estate in defendant's vendor. As it is, the defendant avails himself of the construction placed upon the instrument by the sworn allegations of the bill, and claims to hold the title of Joseph Gill, and at the same time procures a dismissal of the bill, because his vendor had no title at all. Is he not presumed to acquiesce in that construction, unless he disclaim, or set up a title different from that which such construction of the instrument would give him? Be this as it may, we think the reasonable intendment, as deducible from the deed itself, the character and situation, as well as the conduct of the parties, taken in connection with the subject matter of the gift, is, that an estate vests in Joseph Gill for the life of himself and wife, and that the defendant, by his purchase, acquired that estate.

The chancellor erred in dismissing the bill, and his decree is reversed, and the cause remanded, that he may, by requiring the proper security, protect complainants' interest in the slaves against the contemplated injury.