14  569
76  629

## JAMES HEFFLEFINGER v. ALMIRA GEORGE.

See this case as to the revision by *certiorari*, under the Act of 1848, (Hart. Dig. Art. 1230,) of proceedings of the Probate Court, which were had before that Act was passed or took effect.

The widow comes within the description of persons, on whom the right to institute a proceeding to revise the final settlement of an administrator's account, is conferred by the Statute, by the expression " any one interested in the estate."

When it is provided that any one interested in the estate, may have any account of the administrator revised and corrected, we do not understand that it is intended that all persons so interested must join in the proceeding to be instituted for that purpose. Whether all persons who appear to be interested in the subject matter, should be joined, either as plaintiffs or defendants, is not the question we are now considering. That would perhaps be proper.

Where one of several persons, interested in an estate, institutes a proceeding to revise any account of an administrator, if successful it enures to the benefit of all persons similarly interested ; *Quere*, whether, if unsuccessful, others would be precluded from instituting another similar proceeding?

See this case as to the revision of the account of an executor or administrator, on appeal or *certiorari* ; and particularly where it appears from the face of the vouchers, that they were barred when allowed by the executor or administrator, or when approved by the Chief Justice.

See this case as to the settlement of the estates of deceased persons.

Error from Red River. Petition filed August 16th, 1851, by Almira George, for a *certiorari* to bring up for revision the proceedings of the Probate Court of Red River county, in the matter of the estate of Fleming George, who died in 1842, and of whose estate James Hefflefinger was then appointed administrator. The petition alleged facts to show that the Probate Court of Red River had no jurisdiction ; and alleged improper

·charges by the administrator, and his failure to charge him-self with a large part of the estate, stating particulars, which came to his possession. The plaintiff alleged "that she is the "widow of said Fleming George, deceased, and as such inter-"erested in said estate." Defendant filed a general demurrer; ·alleged that he had well and truly administered said estate; ·and pleaded that two years had elapsed since the proceedings, ·sought to be revised, had taken place. June 3rd, 1853, the Court sustained defendant's demurrer, and gave the plaintiff leave to amend. `August 4th, 1853, the plaintiff filed an amend-ed petition, alleging therein in addition to the particulars of the original petition, that Fleming George left six children, Eliza, &c., all of whom were minors; stated many additional items, ·and among others, that the administrator had allowed and the Probate Court had approved claims to the amount of $2,000, `which were barred by limitation; alleged that after the re-moval of Hefflefinger, to-wit: at November Term, 1849, she was appointed and still continues to be administratrix of said estate, and that she is also interested in said estate as the widow of said George, and the natural guardian of her minor chil-·dren. The transcript from the County Court was made a part ·of the amended petition. The prayer was, "that upon the ·"hearing of this cause, the judgment of the Probate Court afore-·"said, allowing as credits in favor of the said James Heffle-·"finger, claims that were presented to him for allowance against ·"the estate of said Fleming George, after the time prescribed ·"by the statute in that case had elapsed, may by your honor be ·"reversed and held for nought, and the said Hefflefinger be ·"compelled to account in this Court, under the orders and ·"direction of your honor, for all assets of the estate of the ·"said Fleming George, that have come into his hands, or that "ought to have come into his hands as administrator thereof; ·"and that he may be credited by such sums only as he paid on ·"valid claims against said estate, and were presented to him ·"for allowance within the time prescribed by law," and for gen-·eral relief. The amended petition omitted the allegations as

to the jurisdiction of the Probate Court of Red River county. The defendant filed a demurrer, and stated for special cause, that the amended petition was filed in the name of Almira George as administratrix, when the original was in her individual right, and for other causes apparent on the face, &c., and in case the demurrer should be overruled, defendant adopted his answer to the original petition. December 2nd, 1853, the demurrer sustained and petition dismissed. December 8th, 1853, on motion of a previous day, judgment set aside, and cause reinstated. May 30th, 1854, the plaintiff amended by withdrawing part of the allegations of her petition (relating to land; not previously noticed in this statement.) November 28th, 1854, plaintiff amended, by striking out from her original petition, so much thereof as alleged facts to show that the Probate Court of Red River county had no jurisdiction of the estate; alleged that the children named in the amended petition, were also the children of plaintiff; that they are all still minors, and that this suit is prosecuted by plaintiff in her own right, as the widow of said Fleming George, deceased, and as the natural guardian and next friend of said children. Defendant's demurrer overruled; verdict for the plaintiff for $2,146 84, principal, and $959 76, interest. Judgment for said amounts in favor of the plaintiff "as the widow of Fleming George, deceased, and as the next friend of William," &c. Motion for new trial overruled.

It appeared from the transcript of the Probate Court, dated May 30th, 1848, as follows :

" James Hefflefinger, Administrator of the ⎱ Petition for final
    " Estate of Fleming George, deceased.     ⎰     settlement.

" And now, at this day, came the administrator by attorney, "and in his own proper person, and presented the Court with "his report and vouchers; and after an examination of said "report and the accompanying vouchers, it is ordered that said "report and vouchers be and the same are hereby approved, " and on motion of said attorney, ordered to be filed for further " action at the final settlement of said estate; and on motion

"it is further ordered, that said Hefflefinger be allowed the " sum of one hundred and seventeen dollars and seventy-four " cents, the amount of his commissions, as will appear by his " report to be due him from said estate, per voucher forty-two, " for and on account of moneys paid out and received for said " estate."

On the 30th of November, 1849, the final account of Hefflefinger, showing a balance against the estate, of $424 80, was confirmed, and Mrs. George being appointed administratrix, an order was entered to the effect that she pay said amount.

There was a statement of the facts. Nearly all the claims against the estate, were filed in 1847, and were on the 29th of May, 1848, endorsed approved by the Probate Judge. The defendant requested the Court to instruct the jury, that the plaintiffs must show that they were all under some of the disabilities mentioned in the Statute at the time the cause of action accrued. The Court refused so to instruct the jury, and instructed them as follows :

This is a suit brought under a Statute of our State, the provisions of which authorize any person interested in an estate, to apply at any time within two years after a final judgment in the Probate Court, by writ of *certiorari* to remove a cause from the Probate Court into the District Court for revision. According to my construction of the Statute, the Act of limitations cannot operate as a bar to the proceeding, so long as there is one party qualified to bring the suit, and this opinion disposes of the instruction required by the defendant's counsel, which may be considered as rejected by the Court.

Your duty, gentlemen, will be rather tedious, but not very difficult ; you will act rather as a commissioner in chancery, to state an account between the defendant and the estate of Fleming George, deceased ; and in order to do so correctly, you will compare the testimony, with the following principles of law, taking the reports made by the administrator, as conclusive against him, and find a verdict for the balance.

1st. The allowance of a claim by an administrator, under

the Act of 1840, did not suspend the statute of limitations; but the Statute continued to run, and barred the claim, unless it was approved by the Probate Judge, before the expiration of the time fixed by the general law of limitations.

2nd. Demands against an estate, which accrue after the decease of the intestate, must be presented to the administrator for allowance and to the Chief Justice for approval.

3rd. If a cause is brought to the District Court from the County Court for revision, by appeal or otherwise, the same must be tried *de novo*, and if the vouchers filed by the administrator, show upon their face, that they were barred before they were allowed by the administrator, or before their approval by the Chief Justice, they cannot be allowed as credits for the administrator, in his account against the estate of his intestate.

4th. If it is apparent from the transcript of a cause brought from the County Court to the District Court, to revise a settlement of an administrator's account, that there are erroneous vouchers placed to the credit of the administrator, the same cannot be allowed as credits in the District Court, unless the administrator shows by evidence outside of the transcript, that said vouchers are not erroneous, as they appear in the transcript.

The errors assigned were,

1st. The Judge erred in not sustaining the demurrer of the defendant.

2nd. The Judge erred in refusing the charge to the jury, requested by defendant.

3rd. The Judge erred in his charge to the jury.

4th. The Judge erred in refusing a new trial.


*Morrill & Dickson* and *Mills & Murray*, for plaintiff in error. The probate Act in force May 30th, 1848, was the Act of 1846, (Hart. Dig. Art. 1083–1108,) the last Section of which repealed "all laws and parts of laws heretofore in force relative

to the duties of Probate Courts, and the settlement of succes-
sions."

By the sixteenth Section of this Act, (Hart. Dig. Art. 1098,)
it is enacted "that any party interested in his own right, or
"as representative in right of another, may, by giving security
"for the costs and damages, appeal to the District Court from
"any judgment, decree, or order of the Probate Court rendered
"in Term time, within twenty days from the date of said judg-
"ment, decree or order."

We have said that this Act of 1846 was the only Act relative
to Probate Courts then in force. The Act of 1848 did not
take effect till on and after the first Monday of August, 1848.
(Hart. Dig. Art. 1246.) The Act of the 16th March, 1848, en-
titled an Act concerning proceedings in the District Court,
(Hart. Dig. Art. 801, 822,) the 7th, 8th and 9th Sections of
which permit the proceedings of County Courts pertaining to
the estates of decedents, &c., to be removed to the District
Courts, to be revised and corrected in two years, did not take
effect and was not in force till the first day of August, 1848.
(Hart. Dig. Art. 822.) The same provisions are made in the
General Probate Court Act of 1848, (Hart. Dig. Art. 1230,)
that are made in the District Court Act, but neither of them
was in force till August, 1848.

The question therefore that first arises in this Court was
presented by the demurrer in the District Court. There is an
attempt to revise a decree, order or judgment, rendered in the
Probate Court in Term time, on the 30th May, 1848, by virtue
of an Act taking effect in August, 1848.

It is evident that the Legislature did not intend that the Act
should have a retrospective bearing. But it makes no differ-
ence if the Legislature had expressly provided for this case;
for "there is a power behind the throne greater than the throne
itself." The Constitution has placed a proviso upon every Act
of the Legislature, "that this Act shall not have a retroactive
effect."

The Act of 1846, (Hart. Dig. Art. 1098,) before quoted, au-

thorizes "an appeal within twenty days from the date of said judgment, decree or order." There was certainly more than twenty days from the 30th May to the 1st August following. There was no exception for the benefit of minors as is provided in other Acts of limitation, which Acts have no bearing upon the subject matter in this case. And there is no way of revising or altering the judgment, order or decree made in May, 1848, unless by giving the law a retroactive effect.

In the case of Taylor v. Duncan, decided by the Supreme Court of the Republic of Texas, there is discovered a great similarity to the case at bar. In that case Judge Morris uses the following language :

"Upon this point then, we must conclude, that appeal was "the only remedy, known to the law at the time of the rendi-"tion of this judgment. The fair and proper method of con-"struing Statutes, is to give them prospective action, having "effect only on causes that may arise subsequent to their pas-"sage. Unless, therefore, express words be used, clearly intimat-"ing the will of the legislative body, that the operation of the "Statute should be retrospective, Courts will not give such "opertion by construction. There is nothing in these Statutes, "which either directly or by implication, requires such con-"struction at our hands. But suppose that the intention of "the legislative body was, that all causes previously adjudicated, "where the remedy by appeal had been lost by lapse of time, "and laches of the party should, by means of this writ, again be "revived by this tribunal, if the parties so wished ; such a Stat-"ute would be plainly retrospective, and if it affected the rights "of individuals, would, under our Constitution, be null and "void. In the case under consideration, the plaintiff had ob-"tained his judgment, and the defendant had lost his remedy "by appeal, by failing to resort to it, in the time prescribed by "law. The plaintiff's right had, under the law, become final "and vested. A law which infringes a vested right, by retro-"spective action, is void under our Constitution. The judg-"ment in this case, was a vested right at the time of the pas-

"sage of these laws ; therefore, so far as affecting that judg-
ment, they are null and void." (Dallam, 517.)

It is difficult to conceive cases more nearly parallel than the
case at bar, and the case of Taylor v. Duncan.   The reasoning
of Judge Morris is alike applicable and conclusive.   This case
has been referred to, and quoted with approbation by this
Court, in the case of DeCordova v. Galveston, (4 Tex. R. 570.)
In this last mentioned case, Chief Justice Hemphill quotes, en-
dorses and adopts as law, the decision of the Supreme Court of
New Hampshire, and divers other cases, where the principle
contended for by appellants is distinctly recognized, " that a
" Statute purporting to grant a new trial in a civil cause after
" final judgment, was retrospective and void ; every Statute
" which takes away or impairs vested rights acquired under
" existing laws, must be deemed retrospective ; if an attempt
" were made by law, either by implication or expressly, to re-
" vive causes of action already barred, such legislation would
" be retrospective, and would therefore be inoperative." (4
Tex. R. 480.)

II.   The remarks thus far made are intended to be applied
to the first and second, as well as the third error assigned, but
as the third assigned error contains other matters, we will now
proceed to that portion of the Judge's charge numbered three,
wherein it is stated that, " the limitation of two years,
" within which suits may be brought in the District Court, to
" revise the settlement of an administrator's account, does not
" begin to run until the account has been confirmed by the Pro-
" bate Court."   This charge is believed to be contrary to the
law, and to the current decisions of this Court.

On the 30th May the Probate Court " ordered that said re-
" port and vouchers be and the same is hereby approved, and
" ordered to be filed for further action at the final settlement
" of the estate."

This order was either something or nothing, and if it was
something, it was either an " order, judgment, or decree or pro-
ceedings."   It was not a final judgment, and the Statutes do

not contemplate that it should be so.  (Hart. Dig. Art. 1098, 807.)

The proceedings that are sought to be revised and corrected, it must be recollected, did not transpire under the law of 1848, but under the law of 1846.  The 121st Art. of the Act of 1848, (Hart. Dig. Art. 1330,) cannot therefore affect this case, unless a retroactive effect is given it.  The "approval of the report "was a judicial act; a *quasi* judgment, and so far affected the "rights of the parties as to prevent any further investigation in "that Court."  (Neill v. Hodge, 5 Tex. R. 489.)  Taking the law as it then appeared, even without a judicial construction, there was a judgment, or, as called by Judge Lipscomb in the case just quoted, it was a *quasi* judgment, which the administrator was bound to pay, if not appealed from in twenty days. (Jones v. Underwood, 4 Tex. R. 116.)

III.  But, admitting all the points previously made to be unsustained, the next question is, are the plaintiffs barred by the two years' limitation, by virtue of Art. 807, Hart. Dig. The Court will take into consideration, that final settlement was made with the Probate Court on the 30th November, 1849. The petition of Almira George was filed 16th August, 1851. The object of this petition was to have the administration declared null and void, at least there was no complaint that the administrator had paid claims that were barred, and which was the gist of the action and judgment in the case.  The amended petition in which the children of George are brought forward, and for the first time noticed, and which formed the subject matter upon which the District Court acted, was filed on the 4th August, 1853, which was almost four years after the final settlement was made, that is sought to be revised.  To avoid the effect of the limitation Act, the plaintiff alleges that the children of George were minors at the time the settlement was made, and still are.  There is no averment that the widow of George is a minor, or is under any of the disabilities enumerated in the Statute.  The testimony in the case shows that one

of the minors arrived at majority by marriage, in the month of February, 1850.

The question, therefore, that is raised by virtue of the facts is, whether the non-existence of any disability on the part of the widow can be pleaded as a bar to the suit.

The Statute, (Hart. Dig. Art. 809,) that governs in this case, says that "writs of *certiorari* to remove the proceeding of the "County Courts pertaining to the estates of decedents and "wards, may be sued out within two years after the proceed- "ings were had that are sought to be revised and corrected "and not afterwards; saving to persons, *non compos mentis*, "infants and femes covert, two years after their respective dis- "abilities shall be removed."

It is unnecessary for us to make any observations upon the situation of the case, or the law of the same, had none but the children of George been the plaintiffs. The law makes the widow the owner of one-half of the judgment, and whether the heirs of George could have instituted the appeal without making the widow a party, it is unnecessary for us to inquire. It seems that the parties considered that she was a necessary party, as this is a personal action, and have brought the suit with that view; and the appellants therefore take the case as they find it.

As before stated, the claims against the estate of George were approved by the Probate Judge on the 29th May, 1848, and this approval entered on record on the same day; and final settlement was made on the 30th November, 1849. The original petition was filed August 16th, 1851, more than three years after the approval of the Probate Judge. But the amended petition which discloses the cause of action, and the only facts that were in issue before the District Court, and which made the heirs parties, if they are so made, was filed on the 4th August, 1853, more than three years after the administrator settled with the Court. The whole question then depended upon the construction given to the Statute.

It will be seen that different Courts have given different

constructions upon the Statutes, similar in all respects to the Statute of 1848, (Hart. Dig. Art. 809,) and in some instances the same Court has given different constructions upon the same Statute. All of these constructions, however, have depended upon different views taken by the different judiciaries as to the object and intent of the Statute of limitations. Whenever the Courts have looked upon the Statutes of limitation as stated by Judge Story and endorsed by this Court, (1 Tex. R. 739,) they have endeavored to carry out the intentions of the Legislature; and it would seem that if there ever was a people, whose peculiar habits and actions, and the glorious uncertainty of whose laws,—changeable as the people who make them,—demand that the most liberal construction should be placed upon the limitation Acts, that people can be found in Texas, and more especially so in regard to the Probate Laws. Coming, as Texans have, from every portion of the world, no one, except the emigrants from Louisiana, find anything in the Probate Law with which they are familiar. And it would seem that if the appellee in this case insists upon that construction of the law of limitation, that would deprive the honest creditors of the estate of George out of four thousand dollars, or what is worse, compel the administrator, who ignorantly and innocently paid this sum, to refund it out of his own estate, certainly the principles of set-off require that as favorable construction should be given for the appellant as the nature of the case may demand.

Art. 809 (Hart. Dig.) states a general rule, "that writs of "certiorari to remove the proceedings of the County Courts "may be sued out within two years after the proceedings were "had, that are sought to be revised and corrected, and not "afterwards." The "proceedings" that were "sought to be revised and corrected" took place in 1848, and the petition was not sued out in two years; but the appellees attempt to avail themselves of the exceptions to this general rule, and the exceptions apply only to part of them, but the Statute does not make the exception apply to part. It cannot be said that the

appellees all come within the exception ; then, of course, as they have placed themselves as one, and made a joint action, and cannot come under the exception, they must come under the general rule. And this is the constrution placed upon similar Statutes. (Marsteller v. McClean, 2 Cond. R. 453 ; Wells v. Ragland, 1 Swan's Tenn. R. 501 ; Holliday v. Kirkman, 6 Mon. R. 379 ; May v. Marshall, 2 Lit. 147 ; Shute v. Wade, 5 Yerg. R. 7 ; 2 Id. 228 ; 4 Durnf. & East, 516 ; 6 Tex. R. 537–8, 567 ; 8 Id. 54 ; 9 Id. 378 ; 10 Id. 74½; 4 Durnf. & East, 516 ; 4 Bibb, 412 ; 1 Littell, 296 ; 3 Id. 47, 49 ; 6 Mon. 379, 464 ; 7 Id. 571 ; 7 Cranch, 156 ; 3 Murphy, 577 ; 7 Johns. 508.)

*Dillahunty* and *Morgan,* for defendant in error. The original and amended petitions embrace the transcript from the Probate Court ; and the same was made a part thereof, hence all the proceedings in the Probate Court in relation to the estate of decedent were fully before the District Court, as a part of appellee's petition.

The only plea of the Statute of limitation filed by appellant, was filed November, 1851. Said plea was based upon Hart. Dig. Art. 1230, which limits the time within which the proceedings in the Probate Court should be revised to two years, which plea was adopted in 1853, as part of appellant's answer to the first amended petition of appellee. Now it is a clear proposition, that appellant could not avail himself of the provisions of any other Act than the one pleaded. This then is full disposition of the defence based upon the Act of 1846.

Further, the statement of facts shows that two years had not elapsed after the proceedings in the Probate Court were had, which were sought to be revised, before the original petition was filed, and two years had not elapsed after the oldest child of decedent had attained the age of twenty-one years, before the amended petition was filed.

Further, it was not necessary that the children of decedent should be made parties in this suit, because the institution of the suit, by the widow, who was jointly interested with the

children, enured to the benefit of all parties interested ; and therefore the Statute did not interpose a bar to the rights of appellee.    (2 Bibb, R. 371.)

WHEELER, J.  The order of the Probate Court, of the 30th of May, 1848, does not profess to be a final disposition of the subject matter ; and it may well admit of question, whether, under the provision of the Act of 1846, (Hart. Dig. Art. 1098,) the party aggrieved was bound to appeal, until there was a final action of the Court upon that subject matter.   We think it, at least, clear that, as the final action of the Court, in the settlement of the account of the defendant, touching his actings and doings in the matter of the administration, was not taken until the 30th of November, 1849, when the whole subject of his administration came under review, and received the final action and approval of the Probate Court, this proceeding was properly instituted and rightly maintained, under the provision of the Act of 1848, (Hart. Dig. Art. 1230,) then in force. We are of opinion, therefore, that the right of the plaintiff was not lost by her failure to appeal from the order of 30th of May, 1848.    (See Hagerty v. Scott, 10 Tex. R. 525 ; 11 Tex. R. 677.)

The original petition, in which the widow of the intestate was plaintiff, was filed within two years from the final action of the Court upon the matters, in respect to which, it is sought to have its judgment revised and corrected ; and was, therefore, in time.   The plaintiff in this petition, comes within the description of persons, on whom the right to institute this proceeding is conferred by the Statute, by the expression, "any one interested in the estate."   And where it is provided, that any one interested in the estate, may have any account of the administrator revised and corrected, we do not understand that it is intended, that all persons so interested must join in the proceeding to be instituted for that purpose.   We do not think the right of action, conferred by the words "any one interested

in the estate," can be construed to mean a right of action conferred, only in case all persons interested in the estate shall see proper to join in bringing the action. Whether all persons who may appear to be interested in the subject matter, should be joined, either as plaintiffs or defendants, is not the question we are now considering. That would, perhaps, be proper; but we do not think it indispensable to the right of those who may see proper to take action in the matter, that all who may be interested in having the action of the Court revised, should join as plaintiffs. We are of opinion, therefore, that the action might well be maintained by the widow, in this case, without joining the children. The recovery would doubtless enure to their benefit. And there are many cases where suit may be brought by the trustee or person having the legal right or title, without naming the beneficiary. There was, therefore, no necessity, we think, to join the children as plaintiffs in the action. Though proper, we do not think it was indispensable. But the introduction of the names of the children into the amended petition did not change the issues or the proofs; or in any manner affect the rights, or the extent of the liability of the defendant in the suit. It did not render him liable to have a judgment recovered against him for any greater or different amount, nor could their omission have subjected him to a second suit for the same. He has been in no way prejudiced by the character in which the plaintiffs are presented upon record; and whether, if suit had not been previously instituted, they would have been precluded from suing at the time of filing the amended petition or not, or whether they were rightly joined or not, is immaterial; as, in our opinion, the suit might have been well maintained by the original plaintiff.

We are of opinion that there is, therefore, no error in the judgment, and that it be affirmed.

Judgment affirmed.