George B. Walker, Administrator, v.
Mrs. M. A. Kerr et al.

No. 332.

1. **Administrators—Subrogation.**—Where an administrator pays out money to a creditor of an estate without authority of law, but the party upon whose claim such payment is made is entitled to a pro rata share in such money, the administrator becomes subrogated to the rights of such creditor, and is entitled to a credit to the extent of such creditor's pro rata share.

2. **Fact Case—Payment of Claims—Order.**—See facts under which it is held that a creditor of an estate whose claim had been classed as third class, secured by a lien on land, was entitled to payment to the extent of the money received by the administrator upon the sale of the land, whereupon such creditor was entitled to have the balance of his claim against the estate to take its place with the fourth-class claims, and to be paid pro rata out of the general assets of the estate.

3. **Same—Limitation.**—Where the legality of a payment made by an administrator to a creditor under an erroneous order of the court, and the credit thereof to the administrator is contested by a creditor of the estate when the administrator files his final account showing the insolvency of the estate, no other account having been filed or exhibit or order shown which would indicate that the estate was in fact not solvent, the administrator is in no condition to invoke the two years' limitation, even if the same were applicable.

4. **Same—Order of Court to Pay Claim Interlocutory.**—The orders of the court to an administrator to pay out money are not made by statute final judgments, as are orders approving or disapproving a claim, but are treated as interlocutory orders; and when the exhibit of the administrator is filed, a creditor may contest his account and credits. In this case it is held, that the contest of a creditor filed upon the first opportunity after such exhibits were presented was not too late, though filed more than two years after the money was paid out under the erroneous order of the court.

APPEAL from Navarro. Tried below before Hon. Sam R. Frost, Special Judge.

*R. S. Neblett*, for appellant.—1. The judgment of the Probate Court of Navarro County, entered after the grant of administration approving and classifying the claims of Theresa Ingram as a third-class claim, secured by a lien on real estate, not appealed from, was a final judgment, and was not subject to collateral attack and review after two years in either the County or the District Court. Rev. Stats., art. 2031; Heath v. Layne, 62 Texas, 686; Hicks v. Oliver, 78 Texas, 233; Williams v. Robinson, 63 Texas, 576.

2. The judgment of the Probate Court entered in May, 1887, directing appellant to pay the claims of Theresa Ingram in full out of the proceeds then in his hands, whether correct or not, was conclusive, and authorized appellant to pay the money, and was not subject to review or collateral attack after two years. Gibson v. Hale, 57 Texas, 406; Williams v. Robinson, 63 Texas, 576.

*McLellan & Prince,* for appellees.—All of this claim in excess of the $2000 that the land sold for was simply a fourth-class claim, and even an order of court to apply the general assets of the estate to its discharge would have been void, and would not have justified him in so doing. Rev. Stats., art. 2037, subdiv. 3; Mullins v. Yarborough, 44 Texas, 14; Clifford v. Campbell, 65 Texas, 243; Evans v. Taylor, 60 Texas, 422.

LIGHTFOOT, CHIEF JUSTICE.—The following statement by appellant is found to be substantially correct, and is adopted:

On November 24, 1885, appellant was appointed temporary administrator of the estate of A. A. Ingram, deceased; and on March 1, 1886, was appointed permanent administrator. He qualified and took charge of the estate. Three notes for $1000 each, executed by A. A. Ingram, payable to the order of Theresa Ingram (who afterwards married Coates), were presented to appellant for allowance, as administrator. They were allowed by him, and on June 2, 1886, they were allowed and approved by the court and classed as third-class claims, secured by a lien on real estate. The real estate owned by the estate of A. A. Ingram was 1280 acres of the McKinney and Williams survey, in Navarro County. The notes referred to were given by the decedent in payment for an undivided half of said land, and were a vendor's lien on the same. Before the notes were executed for the land, W. D. Ingram, who formerly owned it, executed a deed of trust for $1000 thereon in favor of C. P. Kerr. This land was sold under Kerr's trust deed, and T. C. White bought it. Under an order of the court entered on April 3, 1887, Walker paid to the said White the amount of money paid out by him for said land, and took a deed to himself as administrator. This land was afterwards sold under order of the court, for the sum of $2000, and the remaining interest of the estate in the survey was afterwards sold for $3700. After the said notes had been allowed by the administrator, approved and classified by the court as third-class claims for the full amount, and after the land had been sold, it appears that the court, in May, 1887, entered an order directing appellant to pay the three notes so classified by the court, with interest —then amounting to $4200; and appellant, acting under said order of the court, paid off said claims.

On January 16, 1891, appellant filed his final account, asking to be discharged and the estate closed. Appellees, who held claims approved within the time required by law, and classified as fourth-class claims, filed objections to the administrator's report, objecting to $2206.53 of the item shown by said report to have been paid on the claim of Theresa Ingram.

Appellant filed demurrers and answered to the contest presented by appellees, and among other matters, excepted to the contest because it

was a collateral attack on the order of the court: (1) In classifying the claim as third class; and (2) the order of the court in directing the administrator to pay the claims in full out of the proceeds of the property in his hands. In the County Court appellant's exceptions were sustained and his final report approved. Appellees appealed from the order of the County Court to the District Court of Navarro County.

The matter was heard in the District Court at the October Term, 1891, when the exceptions were again urged, and overruled by the court, (to which ruling the defendant excepted), and on final hearing the court held that $2206.53 of the amount paid on the claim of Theresa Ingram was wrongfully paid, and the administrator was not entitled to credit in his final account for that amount, and the administrator appeals.

*Opinion.*—1. The second assignment of error is as follows: "The court erred in holding that appellant was not entitled to a credit in his final account for the sum of $2206.53 paid on the claim of Theresa Ingram, for the following reasons: (1) because the evidence shows said claim had been allowed by the court and classified as a third-class claim secured by a lien on real estate, and that the money paid was the proceeds of the sale of the land on which the claim was a lien; (2) because the evidence shows said money was paid on the judgment of the Probate Court entered in the administration more than two years before the contest was filed by appellees."

In the testimony of the administrator, which was not objected to or disputed, he said: "The claim (referring to the Theresa Ingram notes, aggregating $4200), had been classified as third class, and in paying them I acted under the order of court entered in May, 1887, directing me to pay the claims, amounting to $4200—$2000 of which came from the 550 acres sold to Greer, and the balance was paid out of the proceeds arising from the remainder of the survey and other property of the estate."

The Theresa Ingram claim of $4200 was only a lien on one-half of the 1280 acres of land, or, after the division, 550 acres. After the purchase by White under the first mortgage, the land was divided between himself and the estate, he (White) getting 550 acres, and the estate 750 acres. The administrator, under the orders of the court, bought for the estate the White 550 acres for $1750, which put the title to all of it in the estate, 550 acres being subject to the lien of the Theresa Ingram notes. When this land was sold by the administrator the 550 acres brought $2000, and the 750 acres brought $3750. From this it would seem (if the testimony is stated correctly in the record) that the Theresa Ingram claim of $4200 should have had paid upon it the $2000 for which the land sold upon which she held a lien; and the balance of her claim should have taken its place with the fourth-

class claims, to be paid pro rata out of the general assets of the estate.

The statement of facts is not full or clear.  The court below holds, that when the 550 acres sold for $2000 that amount should have been credited on the $4200 debt, and that the balance—$2206.53—was wrongfully paid on said debt to the exclusion of the other fourth-class claimants.  This far the judgment is correct, if the facts are correctly stated; but it goes further, and decrees that the whole item of $2206.53 shall be stricken out from the credit side of the administrator's account, and that the contestants shall be paid in full.  This part of the decree was erroneous.

Where an administrator had paid out money to a creditor of the estate without authority of law, but the party upon whose claim such payment was made was entitled to a pro rata share in such money, the administrator becomes subrogated to the rights of such creditor, and is entitled to a credit to the extent of such creditor's pro rata share.

After crediting the $2000 for which the land sold, upon which Theresa Ingram (Coates) held a lien to secure her claim of $4200, that debt having exhausted its security, thereby became a fourth-class claim for the balance, and was entitled to share with the other fourth-class claims pro rata in the general assets of the estate.  Rev. Stats., art. 2037, subdiv. 3; Chandler v. Burdett, 20 Texas, 44.

It follows that the administrator is not entitled to the credit of $2206.53, but is entitled to a credit as follows: The $2206.53, with the remaining assets of the estate (after deducting the expenses of administration) should be paid upon the fourth-class claims pro rata, and the administrator being subrogated to the claim of Theresa Ingram (Coates) for the balance due upon the same, is entitled to credit for the pro rata of such fund so apportioned to such claim, whatever that may be.

2.  It is claimed by appellant that the money was paid on the Theresa Ingram (Coates) claim under an order of the court more than two years before the contest was filed, and that the contest was filed too late.  Appellees contend that there was no such order shown.  It is true there was no written order or judgment introduced in evidence, but it was shown by the testimony of the administrator. which was not objected to by appellees, that such an order was entered "in May, 1887."  If there was such an order (and upon this appeal we must conclude that there was), it raised a question not entirely free from difficulty.

In the Revised Statutes, article 2031, it is provided, that "the action of the court in approving or disapproving a claim, shall have the force and effect of a *final judgment*, and when the claimant, or any person interested in the estate, shall be dissatisfied with such action, he may appeal therefrom to the District Court, as from other judgments of the

County Court rendered in probate matters." This section of the statute makes the action of the court in approving or disapproving a claim a *final judgment.* We find no such provisions made with reference to the orders of the court to the administrator to pay out money. This seems to be treated as an interlocutory order, and when the exhibit of the administrator is filed, a creditor may contest his account and show any money which has been illegally expended. Freem. on Judg., secs. 15, 16. This is not an appeal or writ of error, or bill of review, but an objection to or contest of final account, such as is contemplated in the Revised Statutes, article 2142. We know of no law requiring such objections to be made within two years, when neither the annual or final exhibits have been filed by the administrator showing such payments or referring to such orders; and when the creditor files his contest upon the first opportunity after such exhibits have been presented.

By article 2043 of the Revised Statutes, the administrator is required to present his exhibit showing the condition of the estate, at the first term after the expiration of twelve months from the original granting of letters of administration.

By article 2045 of the Revised Statutes, upon the return of such exhibit, if it shall appear therefrom, or from any other evidence, that the estate is solvent, and there are sufficient funds to pay all the debts, the court shall order them paid.

By article 2046 of the Revised Statutes, if it appears that there are not sufficient funds to pay all the debts, the court will, after recognizing the priorities in the several classes, order the general creditors paid pro rata.

In this case, it seems from the testimony that the court, in granting the order for the purchase of the 550 acres of land from White, found that by such purchase the estate was *rendered solvent.* There is no report or exhibit or order shown which would indicate that the estate was not in fact solvent, until the administrator filed his report for final settlement, in which, after showing assets out of which he realized $8533.05, he shows a balance in his hands of $140.25, and leaves unpaid the appellees and other creditors, amounting to $551.62. Under such a state of facts, appellant is certainly in no condition to invoke the two years' limitation, if in fact it can be applied in any case (outside of the approval or disapproval of a claim, which is made a final judgment by statute) where the contest is made on final settlement. Richardson v. Kennedy, 74 Texas, 507; Sabrinos v. Chamberlain, 76 Texas, 629, 630; Hefflefinger v. George, 14 Texas, 569; Williams v. Robinson, 56 Texas, 347; Jones v. Parker, 67 Texas, 76.

The judgment of the court below is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered May 23, 1894.