## HILL v. NORRIS.

1. The release of a debt, or unliquidated demand, is not proved by the certificate of a notary public under his notarial seal, certifying that the same was acknow-ledged by the party executing it: and the rule of the common law, which ex-cludes such evidence, is not varied by the act of 1803, " concerning notaries public," unless perhaps it be shown that such an instrument is " commonly proved or acknowledged before notaries within the United States."

THIS was a proceeding by *scire facias* in the Circuit Court of Bibb, to revive a judgment which the defendant in error re-covered against the plaintiff at the fall term of that Court, holden in 1832. The judgment was by confession, and con-tained a stipulation as follows : " The plaintiff doth agree that no execution shall issue on this judgment, until he shall file in the clerk's office a release signed by James Taylor, of all dam-ages, by reason of his having accepted the bill of exchange which is the foundation of this suit."

The *scire facias* recites, that the defendant in error did, on the 29th day of August, 1837, file the release of Taylor, as contemplated by the judgment; alledges that the judgment is in full force and unsatisfied, save only as to the sum of four hundred dollars, which was paid in October, 1832 ; and calls upon the defendant below to show cause why execution should not issue on the judgment.

The defendant demurred to the *scire facias ;* which being overruled, he pleaded several pleas ; but the only one on which

a question of law was raised, is that which denies the making of the release by Taylor.

At the trial, the presiding Judge sealed a bill of exceptions at the instance of the defendant below, which sets out the release of Taylor, attested by a subscribing witness, with a certificate of a notary public attached, in the following words :

" *The State of Alabama, Mobile county.*—Before me, John F. Everett, a notary public, duly commissioned and sworn, and dwelling in the city of Mobile, personally appeared James Taylor, and acknowledged that he had signed and sealed the foregoing release for the purposes therein mentioned.

In testimony whereof, I have hereunto set my hand and affixed my notarial seal, at Mobile, the 28th day of November, A. D. 1832.

[Seal.]            JNO. F. EVERETT, Notary Public."

To the admission of the release in evidence without further proof, the defendant objected; but his objection was overruled, and he thereupon excepted.

The defendant then offered three witnesses, who stated that they were acquainted with the hand-writing of James Taylor, and from their knowledge of his hand-writing, they did not believe the signature to the release to be his.

The Court charged the jury, that to avoid the release, " the defendant must impeach the notary public as well as the signature of Taylor." To which the defendant excepted, &c. And a verdict and judgment being rendered in favor of the plaintiff below, the defendant has prosecuted a writ of error to this Court.

J. L. MARTIN, for the plaintiff in error.
PECK, contra.

COLLIER, C. J.—There can be no question, but it was competent for the Clerk of the Circuit Court to determine in the first instance upon the genuineness of the release, and if satisfied that it was mady by Taylor, issue an execution. But the certificate of a notary, or other public officer, would not be indispensable to enlighten his understanding—he might, had he thought proper, have acted upon his own knowledge of Tay-

lor's hand-writing, without proof; or he might have received as sufficient, the representation of the plaintiff below, or other third person, as to the genuineness of the paper. The decision of the Clerk, however, could not conclude the plaintiff in error; but it would be competent for him to show, that the writing filed as a release was not a compliance with the stipulation in the judgment.

The *scire facias* called upon the defendant to shew cause why the plaintiff should not have execution of his judgment; and the cause shown is, that a paper agreed to be filed as a condition on which execution was to issue, though filed, is not genuine. The question then is, did the Court err in its requisition as to the proof by which the release was to be disproved. This makes it necessary to consider to some extent the nature of the office, duties and powers of a notary public.

The office of a notary is of very ancient origin, and perhaps is recognized in all civilized countries as intimately connected with commerce. Independent of any statutory regulation extending the powers of a notary, his certificate is only evidence of such acts as he does under the *lex mercatoria*. And under the influence of this principle, it has been held, that a deed of partition made and acknowledged in Alabama, before a notary, was not proved in Louisiana by such acknowledgement. (Phillips v. Flint, 3 Miller's Lou. Rep. 146.) And in ex parte Church et al., 1 Dowl. & Ryl. Rep. 324, the certificate of an American notary under his seal, that a power of attorney had been executed in his presence, which certificate was attested by the British Consul, was held in England to be no evidence of the execution of the power. There was a subscribing witness to the power, the Court said, "Probably in a Court of civil law, the notarial certificate would be sufficient; but in a Court of common law, we can only act upon the affidavit of a subscribing witness. We know of no instance in which the Courts have dispensed with such evidence of the execution of such an instrument." And in Maryland, it has been held, that the protest of a master of a vessel, made before a notary, is not evidence. (Patterson v. Maryland, Ins. Co., 3 Har. & Johns. Rep. 71.)

A consideration of the office of a notary, together with the decisions which have been made touching his duties, will show very satisfactorily that, in taking the acknowledgement or probate of instruments, so as to dispense with formal proof of execution in other States or countries, he has no more authority than any private individual. His certificate as to foreign protests, it is said, is accredited upon general principles of commercial policy and convenience; but even the *lex mercatoria*, does not recognize him as possessing authority to certify the execution of instruments, either upon acknowledement of the facts, proof by witnesses, or otherwise. (3 Phill. Ev. 1259, C. & H.'s ed.)

But it is argued, that the third section of the act of 1803, "concerning notaries public," [Aik. Dig. 330,] has extended the powers of notaries, and that enactment made the certificate offered in the case at bar, evidence of the genuineness of the release. The section referred to is in these words: "The said notaries and each of them shall have power to receive the proof or acknowledgement of all instruments of writing relating to commerce or navigation, such as bills of sale, bottomries, mortgages and hypothecations of ships, vessels or boats, charter parties of affreightment, letters of attorney, and such other writings as are commonly proved or acknowledged before notaries in the United States; and also to make declarations and testify the truth thereof under their seal of office, concerning all matters by them done in their respective offices."

It is very clear, that a mere acquittance or release from the payment of a debt or some unliquidated liability, is not an instrument relating to commerce or navigation within the meaning of the act cited; and we think that it is not such a writing, as is "commonly proved or acknowledged before notaries within the United States." At least, the statutes of the different States, or perhaps a single one of them, show no such extension of notarial authority; and if there exists a custom in the States of the Union, which makes the proof or acknowledgement of such a paper, by the certificate of a notary evidence in a Court of justice, it was incumbent upon the plain-

tiff below to have shown it. Such a departure from the common law mode of proof cannot be presumed.

The certificate of the notary then, imparted no additional validity to the paper filed as a release; but the proof of its genuineness should have been adduced at the trial. It will therefore follow, that the Circuit Court erred in requiring the defendant "to impeach the notary as well as the signature of Taylor"; and the judgment is consequently reversed, and the cause remanded.