## McRAE, Adm'r. v. PEGUES, Adm'r.

1. The defendant in error cannot object to a reversal on the ground that the interest of the plaintiff in the matter of litigation was not propounded in the Court below. In cases where distribution is sought in the Orphans' Court, it is the correct practice for the plaintiff to set out his right to distribution; if he neglects to do so, the administrator may compel him to do it by filing an exception; but if this is omitted, he cannot afterwards, on error, question the right.

2. Proof by the grantee of a deed that he deposited it in a post office, directed to another, at a different office, and this person deposes that he never received it— afterwards application is made personally to both the post offices, and also to the General Post Office by letter, and the deed is not found, this is sufficient to let in secondary evidence.

3. Parol evidence of the contents of a deed is improper, when it is shown that the party offering it is in possession of a true copy.
4. A voluntary deed, if delivered to the donee, will pass the title to slaves, as between the donor and his representatives. although not proved or acknowledged, as required by the statute of frauds.
5. A deed of gift, if delivered to the donee, will pass the title to slaves as effectually as if the slaves themselves were delivered.

WRIT of Error to the County Court of Macon.

The proceedings in this case are so defective as not to show with certainty, the right of the plaintiff to institute the inquiry upon which the judgment of the Court below was given. It may be inferred, however, from the caption of the case, that he claims as administrator of the estate of Elmira Outlaw, who was the widow of B. N. Pegues, deceased, and as such entitled to a distributive share of his estate. The suit grows out of a suggestion that certain slaves came to the possession of the defendant, as administrator of B. N. Pegues, belonging to his estate, which have not been distributed or accounted for by the defendant.

The defendant, in his answer to the plaintiff's suggestion, contends that these slaves were given to divers persons, by a deed of gift executed by his intestate in his lifetime, and that by virtue of it, the donees, at his death, took possession of the slaves.

The issue formed between the parties on this suggestion and answer, was tried by a jury, which returned a verdict for the defendant, upon which judgment was given in his favor.

At the trial the defendant introduced one Rainer as a witness to prove the execution of the deed, a copy of which is exhibited in the pleadings. This witness testified that he saw a deed executed by B. N. Pegues, in the spring of 1836, to Wade H. Greening and others, and to which he was a subscribing witness; this deed was delivered to John S. Greening, one of the grantees.

This witness stated that the deed was acknowledged before him, as a Justice of the Peace, but did not state there was any other witness to the deed.

John S. Greening was then called to prove the loss of the deed; and he testified the deed was delivered to him by B. N.

Pegues, and by the witness deposited in the post office, at Cambridge, Dallas county, directed to the Clerk of the County Court of Dallas county, at Cahawba. The witness had forgot whether he paid the postage or not, but he had not paid the Clerk to record the deed. Subsequently he called at the Clerk's office and made inquiry for the deed, when he was informed by the Clerk that it had not been received by him. Witness then called at the post office at Cambridge, and was informed the deed was not there. Some eighteen months or two years afterwards he wrote to the Post Office Department, making inquiry as to the deed, and was then informed it was not to be found among the dead letters in the Department. James D. Craig then testified that he had been Clerk of the County Court of Dallas county from 1828 to 1840, and had never received a letter from John S. Greening containing the deed referred to. That when Greening applied to him for the deed, he applied to the post office at Cahawba, but could hear nothing about it, nor has he ever been able to find it. On this evidence the defendant was permitted to prove the contents of the deed, although opposed by the plaintiff. The deed exhibited in the pleadings is as follows:

"Know all men by these presents, that I, Badaegood N. Pegues, of the county and State aforesaid, for and in consideration of the natural love and affection I have and entertain for Wade H. Greening, the legal heir of Eldridge S. Greening, late deceased, Rufus W. Greening, John S. Greening, John S. Pegues, in right of his wife Elizabeth, formerly Elizabeth Greening, Thomas T. Guy, in right of his wife Mary W. Guy, formerly Mary W. Greening, and William G. Cato, in right of his wife Beatrix S. Cato, formerly Greening, brothers and sisters of my late wife, Amanda P. Pegues, formerly Amanda P. Greening, and for and in consideration of the sum of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, have given and granted, and by these presents do give, grant and confirm unto the said Wade H. Greening, (and the other grantees, again naming them,) their heirs and assigns forever, the following negro slaves, (which said slaves are to remain in my possesion during my natural life, or until I may endeavor to remove them out of the State,) and then to descend to the said Wade H. Greening, (here the grantees are again

named,) and their heirs, viz: one negro man slave called Ben, two negro boy slaves named Major and General, and a negro girl slave called Lucy, together with her increase. And I do hereby bind myself, my heirs, executors, administrators and assigns, to warrant and forever defend the title to the above described slaves, to the said Wade H. Greening, (here the grantees are again named,) their heirs and assigns forever, free from the claims of each and every person.

In witness whereof I have hereunto set my hand and seal, this — day of ———, eighteen hundred and thirty.

B. N. PEGUES, <i>(seal.)</i>

Signed, sealed and delivered in presence of—

Acknowledged before Thomas G. Rainer, a Justice of the Peace.

The plaintiff then requested the Court to charge the jury—

1. That delivery is essential to the validity of a gift of personal property, and without such delivery the title does not pass. The delivery must also be according to the nature of the thing given.

2. That actual delivery of possession is an essential ingredient in a gift of personal property, and a gift only becomes perfect by an actual delivery and acceptance.

3. That when gifts of personal property are made by deed, the deed must be proved and recorded within twelve months after the execution thereof, unless possession really and *bona fide* remain with the donee.

These charges were severally refused, and instructions given that if the gift was made by deed, the delivery of the deed transferred the right to the property, and would be valid between the parties and their representatives, without an actual delivery of the property ; and if the deed contained a stipulation that the possession of the property should remain with the donor during his lifetime, the possession so remaining is consistent with the deed, and a delivery of the property was not necessary to vest a good title in the donees.

The plaintiff excepted to the charge given, as well as the refusal to give those requested, and also to the admission of secondary evidence of the deed. The action of the Court on these several matters is assigned as error.

CRABB, for the plaintiff in error, insisted that the *original deed* ought to hcve been proved to have been duly executed, before secondary evidence of its contents could be legally admitted. [1 Phil. Ev. 452.] This course was not pursued, nor was the deed itself so executed as to render it valid. The statute requires such a deed to be acknowledged or proved in Court. [Digest, 207; 1 Ala. Rep. 52; 2 ib. 117, 648.]

The loss of the original deed ought to have been clearly shown, and *a diligent and thorough search* made for it. The loss being established, a *copy* of the deed, if in existence, as it was in this case, ought to have been introduced instead of parol evidence of the contents. [1 Phil. Ev. 437; Riggs v. Taylor, 9 Wheat. 485.]

But no evidence could warrant the admission of this deed to the jury. It is a *nude pact*, and the consideration expressed is neither good nor valuable. Independent of this, it is void for the want of the prerequisites enumerated by the statute of frauds. [Digest, 207.]

In refusing to give the charges requested, as well as on that given, the Court erred in the face of the common law, statute law, and the decisions of this Court.

BROWN, contra, relied on the case of Swift v. Fitzhugh, [9 Porter, 40,] to show that the preliminary proof of the loss of the deed was sufficient.

As to the validity of the deed to operate as a gift, and thus pass the title to the donees, he cited Thomas v. Soper, 5 Munf. 28; Banks v. Marksbury, 3 Littel, 278; McCutchen v. McCutchen, 9 Porter, 650.

As to the possession remaining with the donor, it cannot be disputed by a volunteer, but here it is consistent with the deed. [Edwards v. Harbin, 2 Term. 587; 3 ib. 620.]

He argued that the statute of frauds does not avoid either fraudulent or voluntary conveyances, unless at the instance of a creditor or *bona fide* purchaser. [Sewall v. Gliddon, 1 Ala. Rep. N. S. 52; Lund v. Jeffries, 5 Rand. 211; Shirley v. Long, 6 ib. 764; Lucy v. Wilson, 4 Munf. 313; Lightfoot v. Colgin, 5 ib. 71; Goodwin v. Morgan, 1 Stew.; Rochelle v. Harrison, 9 Porter, 352.]

But should there be error, the present plaintiff has propound-

ed no interest upon the record, so that it is impossible to determine the error can injuriously affect him, as his interest is entirely a matter of conjecture. The rule of this Court is that the plaintiff must show that his rights have been injuriously affected. [Duffey v. Pennington, 1 Ala. Rep. N. S. 506; Hilman v. Gayle, ib. 517; Stone v. Stone, ib. 582.]

GOLDTHWAITE, J.—1. The defendant objects that no reversal of this judgment can be had, even after it may be ascertained to involve material errors, because the plaintiff in the Court below has omitted to set out his interest to litigate any questions with the defendant. This defect cannot, in our opinion, avail the defendant, because it was his duty, as it clearly was his right, to require the other party to show by what right he claimed to call for a distribution. The practice in the Ecclesiastical and Admiralty Courts, is for the party claiming a right to litigate to propound his interest, and such, strictly speaking, is the proper course in our Orphans Courts, but it is now perhaps too late to insist on the application of rigid rules to such proceedings; not that they would be otherwise than beneficial, but because the laxity of practice has become so general and so inveterate, that much expense, and possibly injury, would arise by the delay of judgments on mere technical grounds. All that can now be done without express legislation, is so to mould the practice, that the rights of all may be preserved.

We apprehend the cases are very few and rare that questions of the sort raised on this record are ever litigated by those who have no interest in them—and therefore all that justice demands is, that the other party may be permitted to require the person who seeks to litigate such or similar matters, to propound his interest. This if not shown in the first instance, upon the application to the Court can always be called out by a precise exception. When the interest is propounded it can either be admitted or controverted as any other allegation, but it never can form any part of the inquiry, when an issue is made up upon the merits.

2. The question which is made as to the sufficiency of the preliminary proof of the loss of the original deed, in order to let in either parol proof of its contents, or a copy, was deter-

mined by this Court, in Mordeca v. Beal, [8 Porter, 529,] and again in Swift v. Fitzhugh, [9 Porter, 39.] In both these cases, as in this, the utmost possible diligence to trace the paper was not shown, but a reasonable presumption of its loss was afforded, and every presumption rebutted that it was withheld from the jury. The party who had the custody of the deed, placed it in the post office addressed to another person, and this last deposes that it was never received by him. Subsequent application is made personally to both post offices, and by letter at the General Post Office, but at none of these places can it be found. We cannot conceive a clearer case for the admission of secondary evidence.

3. Doubtless it would be irregular to give parol evidence of the contents of a deed, if the party was shown to have knowledge of a true copy; but nothing of that kind is shown by the evidence—the witness was permitted to give evidence of its contents—whether these contents were proved by the exhibition of a copy, or whether the witness spoke from his recollection of the deed, does not appear. The former, however, is much more probable than the latter; and it was the duty of the plaintiff to render this matter entirely clear, by questioning the witness, if he desired, upon it, to raise an exception. [Carson v. The State Bank, [June Term, 1842, p. 148.]

4. It is said that no preliminary evidence could authorize the admission of the contents of this deed, because it was inoperative and void. This is a question not made at the trial of the cause, and therefore could not now be properly raised—but as it is somewhat involved in the charge given by the Court, we shall proceed to consider it.

The enacting clause of our statute of frauds declares, "that every gift, grant or conveyance of lands, tenements or hereditaments, goods or chattels, or any rent, common or profit, out of the same by writing or otherwise; and every bond, suit, judgment or execution, had, made or contrived of malice, fraud, covin, collusion or guile, to the intent or purpose to delay, hinder or *defraud creditors* of their just and lawful actions, &c., or to deceive those *who shall purchase,* &c., shall be from henceforth deemed and taken *only as against the person or persons,* &c., whose debts, &c., by such guileful and covinous devises and practices as aforesaid, shall, or might be, in any

way disturbed, &c., to be clearly and utterly void." It then proceeds further to declare, that if any conveyance be of goods and chattels, it shall be fraudulent, *within this act,* unless recorded, &c.

Under the terms of this statute it is difficult to conceive how any doubt could ever have been entertained that the deed was good as between the parties, though never recorded. The object of this statute is to protect creditors and subsequent purchasers, whether with or without notice. [Myers v. Peak, adm'r, 2 Ala. Rep. 640; Oden v. Stubblefield, ib. 684.] As to these two classes of persons—deeds not acknowledged or proved in the manner required are void—but are so *only* as to them. It seems to us impossible to give any construction to this statute, without departing from its clear intention, which will avoid a voluntary deed, except at the instance of a creditor or subsequent purchaser.

Our statute is almost a copy from that of Virginia, and the same construction has there been given. [Lund v. Jeffries, 5 Rand. 211; see also Lightfoot v. Colgin, 5 Munf. 42.]

5. The request of the plaintiff for the specific charges which were refused, seems to be predicated upon the idea that delivery is as essential to the gift of a personal chattel, when the title is conveyed by deed, as it certainly is when the gift is evidenced by parol merely. The instructions given assume, that when the gift is by deed, the delivery of the deed is equivalent to the delivery of the chattel.

In our opinion the Court was correct in its exposition of the law, and we need only to refer to the case of McCutchen v. McCutchen, [9 Porter, 650,] in which this question arose, and was determined in accordance with the views now expressed.

Upon a review of the whole case, we can perceive no error, and therefore the judgment is affirmed.