WILLIAM DAVENPORT v. JAMES W. HERVEY.

The 123d section of the act to regulate proceedings in the district courts in relation to estates reads as follows: "Any person who may consider himself aggrieved by any such decision, order, decree, or judgment, shall have the right to appeal to the district court of the county; *Provided*, He shall, within fifteen days after such decision, order, decree, or judgment shall have been made and rendered, file with the clerk of said court a bond for costs and damages, with good and sufficient sureties, payable to the chief justice, in such sum as he shall require, and to be approved by said chief justice, conditioned that the appellant shall prosecute said appeal to effect, and perform the decision, order, decree, or judgment which the district court shall make thereon, in case the cause shall be decided against him." (Paschal's

Dig., Art. 1384, Note 523.)   The party appealing must have an interest in the proceedings in which the decree or order is passed, which may be injuriously affected thereby.

The practice in the ecclesiastical court, to which our proceedings in relation to estates is analogous, is for the party claiming the right to litigate to propound his interest in the matter in dispute. And it is but just that he should state his interest before the administrator is required to answer him.   But if the administrator waive his right, he cannot be heard to object in this court, for the first time, that his adversary had no interest in the estate.

Where those objecting to the final account of the administrator stated that they acted for the creditors and heirs, this court cannot say that such a contestant is not an heir.

Where the objection was to the final account of the administrator, and the issue made was as to the correct balance in the hands of the administrator subject to distribution, any creditor would have had the right to appeal, for all creditors are alike interested.

And when the district court reversed the judgment of the county court and found a larger balance in the hands of the administrator, the judgment inured as well to the benefit of those who did not appeal as of those who did.

This court need not notice an error which is not assigned. (Paschal's Dig., Art. 1591, Note 618.)

Where the transcript was filed in this court less than forty days after the judgment in the district court, the appellant has the whole forty days within which to assign errors, and he may assign them and bring up a new record, and have the record prematurely filed by the appellee dismissed at the appellee's cost, or he may have a copy of the assignment of error certified and attached to the new record already filed. (Paschal's Dig., Art. 1494, Note 586.)

It is not the duty of the clerk to forward the transcript to this court, but it is his duty to deliver it to the attorney demanding it, and he should invariably indorse upon the transcript to whom he has delivered it, or, if he forward it, under whose order he does so; and if this rule be not observed in future, we shall be compelled to enforce its observance by striking from the docket all transcripts which may be filed without a strict compliance with this rule.   (Paschal's Dig., Art. 1494, Note 586.)

The statute in reference to assigning errors and filing transcripts is mandatory, and intended for the protection of the parties and the court, and the court is not compelled to notice matters upon a record submitted without an observance of the law.

Where the account of the administrator failed to show the amount of interest collected or paid, and the district court, on appeal, charged interest against interest, in the absence of *data* to state a correct account, this court refused to disturb the decree.

APPEAL from Harrison. The case was tried before ASA H. WILLIE, Esq., a special judge chosen by the parties, because Hon. CHARLES A. FRAZER had been of counsel in the matter.

The record is exceedingly voluminous, extending over two hundred and sixty-six closely written pages. But this grows out of our peculiar system. The law provides for a record of all proceedings, and that administrators render annual accounts. But these accounts are not required to be accompanied by vouchers and annual adjudications, so as to give creditors and heirs an opportunity to except. It is also the duty of the chief justices to approve claims allowed by the administrators, and these claims become *quasi* judgments; but they are not judgments of record with the documents, filed so as to be open to inspection. These administrators seem to have carried on the business of selling property, collecting debts, prosecuting suits, paying debts, and managing in peace, until it came to filing a rather loose final account. The following is a summary of all that is material:

In January, 1851, James McDaniel and the appellant, William Davenport, were qualified as administrators of the estate of Thomas Murphy, deceased, and have since continued to act in that capacity. At the August term, 1859, of the county court of Harrison county, they presented for final settlement their exhibit and account of the condition of said estate.

Exceptions had been filed June 27, 1859, to this exhibit and account, on behalf of McFall & Co., Fearn, Donegan & Co., and J. W. Hervey and J. A. Heard, purporting to act for the heirs and creditors of said estate. The exceptions to the account were as follows:

1. The account of said Davenport against said estate for $21,999 20 is incorrect in this, that interest is calculated and claimed on the same for more than five years,

when no interest is calculated or accounted for on the claims for collection in his hands during the same time.

2. The said Davenport has retained in his hands ten per cent. commission on the amount due himself, which he never paid out.

3. The said Davenport has charged the estate the sum of $1,300 for interest, without showing to whom and on what claims paid.

4. The said Davenport fails to account for the interest on about $30,000 for four years, which amounts to $10,000.

5. The said Davenport has charged the said estate with the sum of $200 for administration expenses, without showing the items.

6. The said Davenport has charged the estate with his traveling expenses.

7. He has paid various claims to individuals, as privileged claims, which have no privilege according to law.

8. There are many improper and illegal charges against said estate for which there are no vouchers.

9. Interest and damages rendered in the Supreme Court have not been accounted for.

10. He has failed to account to the estate for the same amount of interest that he collected from the debtors of the same, in this: In taking notes from the purchasers of the property sold to pay the debts of the estate, the first year's interest was added to the principal and the interest thus compounded, and for the compound interest thus used the said Davenport has not accounted.

11. The said Davenport has failed to show the amount of interest or damages collected by him for said estate, except the interest due up to the maturity of the claims.

The administrators answered the exceptions, and in part re-stated the former account, obviating therein some of the objections taken.

Thus presented and excepted to, the county court ren-

dered its judgment upon the account, with the following results:

1. Exceptions to voucher No. 107 sustained, and the other exceptions overruled.

2. That the assets of the estate to be accounted for by the administrators amount to $37,169 14.

3. That the mortgage and other privileged debts, costs of administration, and commissions of the administrators,

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| amount to | - | - | - | - | - | - | $28,682 20 |
| Debts not privileged amount to | - | | - | | - | | 11,731 48 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Total indebtedness | - | - | - | - | - | $40,413 68 |
| 4. Deduct assets from debts | - | | - | | - | 37,169 14 |

| | | | | | |
|---|---|---|---|---|---|
| Excess of debts over assets - | | - | - | - | $3,244 54 |

5. That the privileged debts, costs, and commissions have been paid, leaving the debts not privileged $11,731 48, to be paid *pro rata* out of the remaining fund, $8,486 94, or seventy-two $\frac{34}{100}$ cents per dollar.

6. That the administrators had improvidently paid in full some of the claims not privileged, and others have not been paid their *pro rata*, and they are required to make up the deficit in the payments of the last-mentioned claims, file their vouchers, and make final settlement.

From this judgment James W. Harvey, one of the contestants, (and he alone,) gave notice of appeal.

And a supplemental exception filed as follows: "Except to voucher 84, amount paid to J. F. Williams, as attorney's fees; and to vouchers 92 and 95, for attorney's fees paid to C. M. Adams; and voucher 105, for attorney's fees paid T. A. Patilo; on the ground that the same should be paid by administrator out of his own commissions, and not out of said estate."

In the district court the whole case, upon the law and the facts, was submitted to a special judge, and the records

of the probate court and the accounts and vouchers of the administrators given to him as the only evidence for both parties. The special judge rendered his decree in substance:

1. That exceptions Nos. 2, 7, 9, and 10, are not well taken.

2. That the last or supplemental exception was sustained as to $100, and overruled as to the balance.

3. That the other exceptions are in part well taken, and that the administrators pay all debts, not privileged, at their "full face value;" and also pay $500, to be distributed among the heirs of the estate.

The administrators appealed.

*George L. Hill*, for appellants.—The grounds and reasons for the judgment are not stated, and it is impossible to understand how such a conclusion could have been evolved from the record. There being no written pleadings, every question of law and fact which the record presents was submitted to, and must be taken to have been decided by, the judge, especially where the question must necessarily have been decided before arriving at the judgment which was rendered. The appeal to this court, it is conceived, brings before it every question in the record which, if decided in favor of the appellant, will tend to show that the judgment of the district court ought to be reversed.

1. The district court did not have jurisdiction to try the case. Jurisdiction is claimed for the district court by virtue of the appeal of James W. Hervey from the judgment of the county court, under article 1532, Hart. Dig., section 123 of the act of 1848, regulating estates, &c., which is as follows: "That any person who may consider himself aggrieved by any such decision, order, decree, or judgment, shall have the right to appeal to the district court of the county: *Provided*, He shall, within fifteen days after such decision, order, decree, or judgment shall have been made

and rendered, file with the clerk of said court a bond for costs and damages," &c. [Paschal's Dig., Art. 1384, Note 523.]

The filing of the bond within fifteen days from the rendition of the decree is a condition precedent, the performance of which is essential to the transfer of the case into the district court, and without which the jurisdiction of the district court, as an appellate court, does not attach to the subject-matter:

The judgment of the county court appears by the transcript to have been rendered the 21st day of August, 1859, and the appeal bond was filed September 16, 1859. Unless our construction of the statute is erroneous, it appears by the record that the district court did not have jurisdiction of the case. That our construction is right, we refer to the following authorities:

Burr v. Lewis, 6 Tex., 76. The opinion of the court by Judge WHEELER is full, pertinent, and conclusive upon the question here involved, and several cases are referred to from other courts.

But it cannot be truly said that the exception to the want of jurisdiction was waived. The pleadings and proceedings were all oral, and this question, with all others that appear in the record, must have been considered and decided by the judge.

The question of jurisdiction can be made at any time, and in this as well as in the district court. (Burr v. Lewis, 6 Tex., 76.)

If the court, *a quo*, did not have jurisdiction, the Supreme Court cannot exercise it on appeal or writ of error. (Able v. Bloomfield, 6 Tex., 263; Roeser v. Bellmer, 7 Tex., 1.)

2. J. W. Hervey, the appellant from the judgment of the county court, was not aggrieved by the judgment, because he is a stranger to the record; or, more accurately speaking, he had no interest in it. He had been a creditor, but he was fully paid. He was not a preference credi-

tor, but obtained full payment before the administrators knew of the insolvency of the estate. He was not an heir. Of all the parties who excepted to the account he is the only one dissatisfied and complaining; the only one who appealed. Can a person, who is shown by the record to have no interest whatever, nominal or real, in his own right, or in the right of others in the matters adjudged, become a volunteer appellant, and thus create and continue litigation after all the parties in interest have ceased to litigate? They are content to receive their *pro rata*, as adjudged by the county court; but this volunteer, who is fully paid, suspends the payment of all the other debts, arrests the settlement of the estate, and causes heavy expense, and the annoyance and damage to others of protracted litigation, without having any possible interest or benefit in the result. If he had commenced an original suit in the district court, and had shown in his petition the entire absence of interest in the subject-matter of his suit that is shown in this record, it is superfluous to say his petition would have been dismissed. It is an elementary principle, that to entitle a party to be heard in court he must show that he has a right to enforce or a wrong to defend. Knight errantry is not tolerated in the legal forum. Persons who have a fancy to Quixotism must look to other places to "wreak their humors" in. (Barton v. Anderson, 1 Tex., 93.) "The petitioner must show a right to sue."

There can be no difference in principle between right to sue by petition and a right to appeal. In either case the right must exist and appear by the same. I suppose there can be no controversy as to the fact of Hervey's having no interest whatever in the estate or assets. There is no pretense that he is an heir. The account of the administrators reports his claims as creditor paid in full, and he has not denied it or excepted to the account on that ground. If he had not been paid, an error so vitally injurious to him would have been pointed out by his exceptions.

3. Suppose the appeal to be well taken by a party in interest, what does it carry into the district court? The transcript of the proceedings of the case. This is provided by the statute. (Hart's Dig., Art. 1233.) But for what purpose? To revise the entire record of the estate? To readjust the settlements with all the creditors? To declare the balance to the heirs and order its payment? Clearly not, unless all this is necessary to remedy the grievance of the appellant. In this case Hervey appealed from the judgment, which awarded him only seventy-two and one-quarter cents in the dollar of his claims against the estate. Other creditors were before the court, and they were content with the judgment, and do not wish it disturbed. The heirs were present, and they were content with the judgment, and did not wish it disturbed. As to all the other parties, the record is made up, final and conclusive, until they choose to complain in some of the modes allowed by law. Hervey is aggrieved by the judgment thirty-seven and one-half per cent. of his claims, and to remedy this he appeals. Now, the district court must review the grounds of the decision in the county court to determine whether and to what extent Hervey is aggrieved. In doing so it may find out that other creditors beside Hervey are aggrieved also; but their grievances are not before the court. Those creditors choose to submit, and the court would hardly force upon them an adjudication which they had already declined by refusing to appeal. The only matter before the court is the case of Hervey, brought up by his appeal; and although the whole transcript would be examined, and perhaps the account of the administrators re-stated, it would only be to ascertain and declare the judgment of the law upon the particular matter before the court. There are several processes by which this proposition may be demonstrated, as thus: Suppose one of the other creditors to file his application in the county court for payment of the *pro rata* amount adjudged to him. The administrators surely cannot plead

the pending of this appeal by Hervey as an answer to the demand of the creditor for payment, and say to the creditor, you must wait until my suit with Hervey is ended, and then it may be I will have to pay you a larger sum. The creditor may well reply, I have nothing to do with the suit between you and Hervey; my claim is distinct from his; I am willing to take the per cent. awarded to me; the judgment of the county court as between us is binding and final, and I cannot be required to submit to the delay and uncertainty of a suit to which I am not a party, and in which I have no interest. This may all be a contrivance between you and Hervey to obtain delay in the payment of the other debts. Would not such a replication cut off all rejoinder?

In Wood v. Wheeler, 7 Tex., 25, in which, upon the appeal of one creditor, the district court made a general order for the benefit. of all the creditors, the Supreme Court says: "No objection has been made to this (general) direction. Had there been, it would have been very questionable whether other creditors could have the benefit of a proceeding to which they were not parties, and to the charges and expenses of which they have not contributed."

In Long v. Williams, 8 Tex., 188, there were three defendants to the judgment of the district court. One of them, Long, appealed; Barton and Watson did not appeal. A point was made in the Supreme Court on the judgment as against Barton, to which the court answered: "Had Barton appealed, the inquiry would have been appropriate whether the record could sustain the judgment against him? It is, however, not perceived on what ground the judgment could be had. He is not a party to the appeal. Long only brings up the case, and the errors are assigned for him alone. The other defendants have not complained, and are, perhaps, fully satisfied with the judgment."

This doctrine, so far from being in conflict with that laid down in Reeves v. Hicks, 14 Tex., 166, "that the proceed-

ings to revise and correct the account of an administrator may be presented by any one interested in the estate, and that all the heirs and creditors need not join," is in harmony with it. The court well says in that case, it is one thing to ascertain the balance in the administrator's hands, and quite another to direct its payment or distribution. In this case, Hervey might properly seek to establish a balance in the administrator's hands sufficient to pay his entire debt; but his appeal can go no further than to ask judgment in his own favor, and not in favor of other creditors. The judgment of the court will not go beyond the rights of the parties in contestation.

4. Let us test the judgment of the district court in this case by the following principles and the rules deducible therefrom:

The decree finds first a general balance in the hands of the administrators sufficient to pay all the debts, and a surplus of $500 to be divided among the heirs. It next proceeds to order payment of the debts and distribution among the heirs. Now, the only matters before the district court were: 1st. Is the appellant a creditor and heir? 2d. If a creditor, is he entitled to full or partial payment, and if to partial payment, what is his *pro rata* share? Upon the first inquiry, it turns out that the appellant is not an heir, and is no longer a creditor. The second inquiry is superseded, and the appeal must be dismissed. But if he is found to be a creditor, the second inquiry is made, and the judgment can perform no other office than to answer it within the limits of the inquiry. This is the whole issue. To go beyond it is to usurp jurisdiction over parties and subject-matter that are content to remain in the province and jurisdiction of the county court, and from which the subject-matter cannot be withdrawn, except by the direct action of the parties to it in some of the modes prescribed by law.

5. The decree of the district court, combining the offices

of both a verdict and judgment, is void for vagueness, indefiniteness, and uncertainty. It does not find the balance of assets in the hands of the administrators. It does not find who are the creditors to be paid, nor the amounts to be paid to each one. It does not find that there are any heirs, or who they are, or how the surplus is to be divided among them. It does not re-state the account, nor point out or revise or correct any error in it. It leaves the account to stand intact, and yet it states a general conclusion and result, wholly variant from, and unsupported by, the account. If the account is erroneous, the error must be pointed out and corrected, so that its results may harmonize with the decree of the court. If the decree is right, then the account is wrong. But how wrong? Is the amount of assets charged against the administrators less than the true amount? If so, where is the deficit and on what account is it to be supplied? Have debts and expenses been paid that ought not to be allowed? If so, which are the items and what the amounts of each? What voucher is rejected? If the decree may go beyond the rights of the parties before the court, and adjudicate matters not before it, and for parties who do not seek its aid, then its work must be thorough, definite, and final. It may not state one or two general propositions, and then send down the record again to the county court, without instruction as to how the record shall be changed and fashioned to support the propositions. We will illustrate: The total of assets reported by the administrators is $37,169 14; but if the debts and expenses of administration are properly reported, the decree finds assets amounting to $3,744 54 more than are reported. How was this determined? Were errors in addition, subtraction, or calculation found in the accounts, and thus the amount of assets increased? This is not stated in the decree.

But, again, the total of debts, costs, &c., reported by the administrators is $40,413 68. If the assets are correctly

reported, then the error, if any, is in some matters of debt or costs and expenses of administration. If so, is it in calculation? It is not stated. Is some claim allowed for payment which the administrators ought not to pay? If so, which is it? Has he allowed some costs and expenses improvidently, and if so, what are they? This is not answered by the decree, except as to $100 of the attorney's fee to J. F. Williams. If the errors existed, in the judge's opinion, on this side of the account, and they had been pointed out, his opinion might be revised here and found to be erroneous. And surely this is the privilege guarantied to every suitor in court. But as it is this privilege is denied him. He is simply told to pay $3,744 54, and no reason or cause is shown for his doing so. He cannot put his finger upon the points made against him so as to ask their revision here.

6. The practical working of the decree of the district court will be the best exposition of its errors. The administrator proceeds to execute it. The decree recognizes all the debts, costs of court, and expenses of administration (except $100) as just, and orders their payment, and in addition to them to pay $500 to the heirs. There is no question made about lost or insufficient vouchers, about costs or expenses. The debit is fixed upon him (except the $100 aforesaid) according to his own statement. It is not unusual to increase the balance to heirs, by striking out some part of the debts or costs. But not so here. All the debts reported (except the $100) must be paid. The administrator finds but $37,169 14 in his hands to pay $40,913 68. Now, it is not improbable that the judge may have, in part at least, stricken out some of the items of the debit of the accounts in making his estimates. If so, and it is almost certainly true, the administrator, being ignorant as to which of the items were so stricken out, must pay them, and to that extent he is the actual loser. If the judge found an error of $1,000 in the debit, the adminis-

trator will lose just that sum, because the error is not pointed out.

7. But the true construction of the decree is, that the entire debits, less $100, are correct, and that the administrators have $3,744 54 more than they have reported. How it has come to their hands, or why they have it, is left to conjecture. It cannot be produced by any errors shown in the account of assets. None such are pointed out or pretended. It cannot be that the administrators received money and did not report it in their account. There is not one word of proof of such a charge. The exhibits and accounts went before the court as evidence— as the only evidence, for both parties—without objection or comment. Outside of the record, therefore, there is not a scintilla of proof, by which any part of the deficit of $3,744 54 is established. If the administrators are thus in default, it must be manifested in and by their own accounts. They are their own accusers, for none others have produced aught against them. If this great mistake does exist, it establishes one of two propositions: either that the administrators have, ignorantly, misstated their accounts, or that they have been mistaken as to the proper mode of stating them. They have brought in all the facts and items, and have marshaled them for settlement; and if their conclusions are wrong, it is not the fault of the facts and items, but of the mode of arranging and presenting them.

*M. J. Hall*, for the appellee.—In November, 1850, William Davenport and James McDaniel were appointed administrators of the estate of Thomas Murphy, deceased. Murphy, at the time of his death, was indebted to Davenport in the sum of $15,420 00, secured by mortgage on Murphy's property, all bearing interest at eight per cent. from the 1st of January, 1851. The property of Murphy was sold by order of court to pay debts. Sales took place first Tues-

day in January, first Tuesday in February and March, 1852; the notes all bearing interest from date.    In May, 1852, the administrators filed an exhibit, showing that debts amounting to $23,613 37 had been presented and accepted, and that the accounts of sales of the property of the estate amounted to $31,583 13, a sum sufficient to pay all the debts of the estate, and leaving a balance of $7,970 76 for distribution among the heirs. At the January term, 1858, of the county court, the administrators filed an exhibit showing that the estate is insolvent, and can only pay the privileged claims, and 33⅓ cents on the dollar of the other debts. Exceptions were filed to the account, and on a re-statement of the same administrators admitted that the assets would pay 72 cents on the dollar.    The probate judge having decided to allow the administrators to settle their accounts on that basis, the creditors and heirs appealed to the district court.    This appeal came on to be heard in the district court at the spring term, 1860, Hon. A. H. WILLIE, special judge, presiding, when an agreement was made by counsel on both sides that a jury be waived, and the whole case, as to both law and fact, submitted to the presiding judge.    He decided that the administrators should pay all the debts in full, and $500 to be divided amongst the heirs.    From this decision the administrators appealed to this court.    The finding of the court is equivalent to the verdict of a jury, and the case now occupies the same position as if a verdict had been rendered by a jury, and a judgment rendered thereon by the court.    The verdict of a jury will not be disturbed unless clearly wrong.    (Chandler v. Meckling, 22 Tex., 37; Long v. Stegee, 8 Tex., 463;   Wilch v. Nashoe, 8 Tex., 190; Edrington v. Kiger, 4 Tex., 95.)

The indebtedness of Murphy to Davenport, which constitutes the principal privileged claim, $15,420 in amount, bears interest from the 1st of January, 1851, an average of about thirteen or fourteen months longer than the accruing interest on the claims due Murphy's estate.    Add four-

teen months' interest to Davenport's claim. This will bring us to the first day of May, 1852, when the first exhibit was made. From this time forward the interest on one side will neutralize the interest of the other.

| | | |
|---|---:|---:|
| Davenport claim—principal, - - - | $15,420 | 00 |
| Interest at eight per cent. to 1st of May, 1852, | 1,439 | 20 |
| | $16,858 | 20 |

On this day the administrator reports assets in
his hands (notes bearing interest) $31,583 13,
with the liability above named, and other debts

| | | |
|---|---:|---:|
| to other parties, amounting to - - - | $7,969 | 76 |
| Thus showing assets, - - - - - | 31,583 | 13 |
| And liabilities, - - - - - - | 24,827 | 96 |

Now, the question arises, how did this estate become insolvent? The interest on $31,583 13 will certainly keep pace with the interest on $24,826 96.

Making a liberal calculation, and one much more favorable to appellant than the facts would seem to justify, the case may be stated thus:

| | | |
|---|---:|---:|
| Balance on hand from sales of negroes, after paying privileged claims with interest to August, 1859, - - - - - - - | $3,941 | 12 |
| Balance due land and negroes after paying Davenport, and interest to August, 1849, - - | 435 | 61 |
| Third payment on land, with interest, - - - | 2,386 | 20 |
| Balance on sales personal property, with interest, | 1,688 | 93 |
| Sale thirty-seven acres of land, with interest, - | 56 | 74 |
| Sale of negroes, with interest, - - - | 3,540 | 34 |
| Sale sixteen bales cotton, - - - - | 746 | 22 |
| Sale of corn, - - - - - - - | 386 | 38 |
| Sale of fifty-six bales cotton, - - - - | 1,668 | 82 |
| Sale of Craine place, - - - - - | 1,700 | 00 |
| Interest and damages in Supreme Court, - - | 848 | 48 |
| | $17,407 | 79 |

The court below allowed the administrator $2,035 44 as commission for money collected and paid to himself, which I think was wrong. He collected the money. He may be allowed five per cent. for that, but why should he be allowed five per cent. for retaining his own money? Yet the court allowed it, and in that way reduced the judgment below what it should have been.

But allowing this charge with inter-
  est, ($684 86,)      -      -      -      $2,720 30
And of unprivileged claims paid and
  to be paid,      -      -      -      -      -      868 09
On balance of debt due estate col-
  lected,      -      -      -      -      -      -      870 34
                                                        ─────────
                                              .      4,458 73

      Balance,      -      -      -      -      -      $12,949 06
This to be reduced by amount paid
  printer,      -      -      -      -      -      $5 00
Balance of cost to chief justice,      -      10 00
Balance cost to clerk,      -      -      -      50 00
                                              ─────────
                                                        65 00

Balance in hands of administrator,          $12,884 06

It is objected by appellant, that the appellees have no such interest in this suit as will enable them to maintain it. McFall & Co., Fearn, Donegan & Co., and also J. W. Hervey and J. A. Heard, appeared by attorney for the creditors and heirs of Thomas Murphy's estate, and excepted to William Davenport's final account, for reasons there given. I hold that any person interested in the estate, either as heir or creditor, has the right to contest the

administrator's account, and to appeal from any decision of an inferior court to the district court.

"Any person who may consider himself aggrieved by any such decision, order, decree, or judgment, shall have the right to appeal to the district court of the county, &c., provided he shall, within fifteen days after such decree, order, or decision shall have been made and rendered, file with the clerk of said court a bond for costs and damages," &c. (Paschal's Dig., Arts. 1382–1384.) This was done in this case, and there can be no doubt of the right of any one who may consider himself aggrieved by any judgment of the county court to take an appeal to the district court.

For the reasons above given, it is respectfully submitted that the judgment of the court below should be affirmed.

MOORE, C. J.—In January, 1851, the appellant, William Davenport and James McDaniel, by appointment from the county court of Harrison county, became the administrators of the estate of Thomas Murphy, deceased, and have since continued to act in that capacity. At the August term, 1859, of said court, their exhibit and account of the condition of said estate, which had been previously filed, was presented to the court, on their application for a final settlement of their administration on said estate. Exceptions were filed to their account by McFall & Co., Donegan & Co., James W. Hervey, and J. A. Heard, purporting to act for the heirs and creditors of the estate. On the hearing of these exceptions and the examination of their account, as re-stated by the administrators, it was ordered by the court that the administrators should settle said estate upon the basis exhibited in their account as re-stated, from which it appeared that there were only assets in their hands sufficient to pay the general creditors seventy-two cents on the dollar of their claims against said estate. From this order of the county court the exceptors to said account give notice of an appeal to the district court. But

the appellee, James W. Hervey, alone perfected his appeal, by giving an appeal bond.  On the hearing of this appeal in the district court, it was adjudged by the court that there were sufficient assets in the hands of the administrators to pay all of the debts of the estate, and the sum of $500 surplus, over and above the amount sufficient for the payment of said debt, for distribution among the heirs of said estate.  And from this judgment William Davenport, one of the administrators, prosecutes this appeal.

The first ground upon which it is insisted the judgment of the district court should be reversed is, that that court had no jurisdiction to try the case, for the reason, as is said, that the appeal bond for the removal of the case into that court was not filed with the clerk of the county court within fifteen days after the order or decree of the county court from which the appeal was taken.  The transcript does not show on what day of the August term of the county court its decree was made.  We judicially know, however, that the term of the court for that month commenced on the 29th day of it.  And it seems not improbable that it must have been several days before a re-statement of the accounts could have been made by the administrators and the final action of the court had in the case.  If so, the appeal bond, which was filed on the sixteenth of September, was given within the time prescribed by the statute.  At all events, as this objection was not made in the district court, when the facts could have been easily shown, and it does not appear from the record before us that the district court had not jurisdiction, it must be held, in accordance with the uniform presumption in favor of the correctness of the action of that court when the contrary is not shown, that it did not wrongfully assume jurisdiction in the case.

Again, it is said the district court had no jurisdiction, because appellee, Hervey, the appellant from the judgment of the county court, was a stranger to the record, was not

aggrieved by the judgment, and had no interest in it. The statute authorizes any person who may consider himself aggrieved by the decision, order, decree, or judgment of the county court, to appeal to the district court, provided he shall, within fifteen days after such decree, order, or judgment, file with the clerk of the county court a bond for costs and damages. (Hart. Dig., Art. 1232.) To prosecute such appeal, the party making it must no doubt have an interest in the proceedings in which the decree or order is passed, which may be injuriously affected thereby. (Stevenson v. Schiver, 9 Gill & Johns., 324.) The practice in the ecclesiastical and admiralty courts, to which that in our county court is in many respects quite analogous, is for the party claiming the right to litigate to propound his interest in the matter in dispute. When any one seeks to become a party contestant, certainly justice demands that the opposite party may require him to declare his interest in the matter before he shall be compelled to enter into any litigation with him. (McRae v. Pegues, 4 Ala., 158.) In the case of Thompson v. Farr, 1 Spear, 93, it is said by WARDLAW, J.: "This executor might have required that the persons who opposed his claim, after showing their interest, should have exhibited a formal allegation, containing at least the grounds of the opposition clearly specified; and after a decree in his favor he was not, upon appeal, bound to plead to any issue in the circuit court which was tendered by a person who was not a party before the ordinary, or which contained any question not decided by the ordinary. But after the executor, waiving his right to all preliminary inquiries, has pleaded to the issue, and the appeal has been decided against him, it is too late for him to object in the court of last resort that one of his adversaries had no interest in the subject-matter." Many, if not most, of the orders of the county court are wholly *ex parte*, and the statute does not restrict the right of appeal to such parties as are before the court when the order is made, but secures

it to any one interested who gives bond within fifteen days after the making of such order. But as the matter is heard *de novo* in the district court on the appeal, the executor or administrator might then, no doubt, require the appellant to propound his interest, and when this was done he might contest it if he saw fit. But if he failed to do this, it is certainly too late for him to object for the first time in this court that his adversary has no interest in the subject-matter. In this case, when the appellee and his associates filed their objection to the exhibit and account of the administrators for final settlement, they propounded their interest by the statement that they excepted to the account on behalf of the creditors and heirs of the estate. We cannot say that they were not interested in the estate in both of these characters. If their declaration of interest is not so clear and full as it might be, no objection was made to it by appellant. And certainly his own exhibits show that appellee had been, if he was not still, a creditor of the estate. Nor do the vouchers filed by the appellant sustain the assertion made for him in this court, that appellee's claims against the estate had all been paid in full.

It is also said that the appeal only authorized the district court to adjust and decree the amount which appellee was entitled to receive as a creditor. If this were correct, it would present no objection to the judgment of the district court; for, as we have just said, appellee claimed to act in behalf of the heirs, as well as creditors, and as the decree of the county court did not determine who are the heirs, their being no funds, in its judgment, in the hands of the administrators for distribution among them, we cannot say that appellee may not be entitled to a share in the estate as an heir. Nor should the judgment of the district court be reversed if it appeared that appellee had no other interest in the estate than as a creditor. It is the order or decree of the county court, passing upon the exhibit and account of the administrators for final settlement, from

which this appeal is prosecuted, in which the first and essential question is, to ascertain and fix the amount of assets in the hands of the administrators for distribution among the heirs and creditors of the estate. It is from this decree, and not from an order of the court relating simply to a matter in which no one but the party appealing is interested, that this appeal is taken. The question here is, what funds belonging to the estate are there in the hands of the administrators? In the correct determination of this inquiry all creditors are alike interested. The judgment of the district court, ascertaining that there is a larger amount of assets in the hands of the administrators than was found by the county court, inures to the benefit of all parties interested in such assets. When such decree of the county court is reversed on appeal, it is reversed as to all parties having a joint interest in it, as well as for those by whom it is prosecuted. (Hefflefinger v. George, 14 Tex., 569.)

The remaining objections to the judgment, which have been discussed by appellant's counsel, go to its sufficiency and correctness, and not to the foundation of the action; and, as no assignment of errors has been made in the case, we are not called upon to consider them. The record shows that two days after the entry in the district court of notice of appeal, appellee gave appellant's counsel notice that he would file the record in this court, and insist on a hearing of the case at the ensuing term of the court, then about commencing its session at this place. And the transscript was filed in this court within less than forty days after the rendition of the judgment in the district court. The district clerk has omitted to make an indorsement on the transcript showing to whom it was delivered, or at whose instance he forwarded it to this court, if he acted as the agent of one of the parties in doing so, as has always been required by the rules of this court. It is not the duty of the clerk to forward transcripts to this court; and he

should not assume to do so unless authorized or requested by one or the other of the parties, or their attorney of record; and when he does so, he should invariably indorse upon the transcript at whose instance it has been forwarded. The failure to observe this rule has become a matter of such frequent occurrence, as well as the occasion of so much embarrassment to the court, especially where cases are not followed here by counsel, that we are constrained to call direct attention to it, and to add, if it is not more strictly observed in future, we shall be compelled to enforce its obedience by striking from the docket all transcripts which have been filed without a strict compliance with it.

The appellant was certainly entitled to forty days from his appeal within which to assign errors in the court below; and if the transcript was filed in this court by appellee in less than that time, appellant could, nevertheless, have assigned errors in the court below; and on his filing a transcript within the time prescribed by law, the transcript filed by appellee would have been dismissed at his cost; or appellant might, after assigning errors, have had them certified to this court, and incorporated with the transcript previously brought up by the appellee. It may be said that appellee, by bringing the transcript into this court before the expiration of the time given appellant to assign errors, has waived the right to insist on errors being assigned; or, at most, that he could only claim that he should be notified in this court of the errors relied on by appellant before the submission of the cause. It must be observed, that the statute upon this subject is mandatory and emphatic, and was evidently intended as well to enable this court to make a proper disposition of the cases brought before it, as for the protection of appellees and defendants in error. And we do not, therefore, feel called upon to regard the mere submission of a case by the parties, on briefs, as obviating an observance of this plain requirement of the law.

If, however, the matters discussed in the briefs had been properly assigned as error, we are not of opinion that they would have required a reversal of the judgment. It is very obvious that the leading vice in the exhibit and account of the administrators, in the opinion of the judge below, to whom the case was submitted, was in the omission of the administrators to show the true amount which had come to their hands by way of interest upon the debts due the estate, or the time when these debts were collected and claims against the estate were satisfied, so that a correct balance, in respect to the interest to be charged against the estate and credited in its favor, could be struck. As the exhibit and account of the administrators did not furnish the court with the facts necessary to enable it to make a critical and exact statement of their account with the estate, and especially as nearly all of the interest-bearing preferred claims against the estate were due to the appellant, Davenport, we see no objection to the rule by which the judge in the court below was guided in striking a balance on the accounts, which was evidently to make the interest on the notes of the estate, after they were due, set off against the interest on the claims against it, and charge the balance, if any, to the appellant. While we do not intend to be understood to recognize this as the correct rule, in all cases, for the adjustment of administrators' accounts, we mean to say, that if any injury has resulted from it to appellant, it is owing to his failure to bring the money of the estate promptly into court, when collected, that it might be distributed to the creditors by its order. And if there is any just ground why he should complain of the judgment, he has failed to present it by the present record, so that we could ascertain it or grant him adequate relief.

There is no error in the judgment, and it is therefore

AFFIRMED.